STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. JOHN YARBOUGH AND JUDY WILSON SMITH, A/K/A JUDY YARBOUGH, DEFENDANTS-RESPONDENTS.

Argued May 7, 1985—Decided October 7, 1985.

628

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

*Richard J. Kaplow,* argued the cause for respondents (*Weinberg & Kaplow,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

■ This is the first time that we have addressed the standards under the Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 98–4 (Code), that shall govern courts in determining whether sentences for multiple offenses are to be served consecutively or concurrently. We determine that in fashioning consecutive or concurrent sentences under the Code, sentencing courts should be guided by the Code's paramount sentencing goals that punishment fit the crime, not the criminal, and that there be a predictable degree of uniformity in sentencing. To achieve these goals, we outline specific standards that shall generally guide courts in comparable cases in the exercise of such sentencing discretion. In our review of the sentencing procedures below, we determine that the sentences imposed by the courts below were not consistent with the standards we announce today. We remand the case for sentence in accordance with these standards.

I

The facts of this case are sordid. They have been set forth in detail in the opinion below. 195 *N.J.Super.* 135 (App.Div.1984). We repeat only those facts essential to disposition. The two defendants, Judy Wilson Smith and John Yarbough, were convicted by an Essex County jury on three counts of aggravated sexual assault upon Smith's eleven-year-old daughter, Kimberly, in violation of *N.J.S.A.* 2C:14–2a., committed between June 1, 1982, and August 17, 1982. Defendants were also convicted of trying to cover up these crimes by giving false information

and otherwise acting to hinder their apprehension in violation of *N.J.S.A.* 2C:29–3b.[1]

In the late spring or early summer of 1982, Kimberly arrived from Chicago to live with her mother, Judy Smith, and her mother's male companion, John Yarbough, in an apartment they occupied together in East Orange, New Jersey. From the date of her arrival, she was sexually abused. What is so incredibly shocking about this case is the callousness of the crimes. Unlike other situations in which the sexual abuse of a child by one in parental authority is concealed from the other, these defendants were partners in crime. In the three separate periods that were testified to, Smith not only did not intervene on behalf of her child, she on occasion condoned the abuse with mocking questions. When the sexual abuse was revealed through Kimberly's confidences in a friend, Smith went so far as to threaten Kimberly's life. Both tried to send the victim back to Chicago to cover up the crimes, but Kimberly was returned to New Jersey and defendants were convicted of the crimes for which they were charged.

Each stood to be sentenced on the three counts of aggravated sexual assault and the four counts of hindering apprehension. Their conduct would test the capacity of the most resolute of judges to focus on the Code's grading of the crime and not the criminal in fashioning a sentence. Yet that is one of the central goals that we have set for ourselves in defining sentencing standards under the Code. *State v. Hodge*, 95 *N.J.* 369, 376–77 (1984). The crimes of which they were convicted were of two grades. *N.J.S.A.* 2C:14–2a.(1) makes sexual penetration of a child of these years a first-degree crime without regard to the

---

[1]Defendants were actually charged with nineteen counts of crime. Three weapons-related counts were dismissed at trial. Two conspiracy counts were merged with substantive offenses. Three counts of endangering the welfare of Kimberly were merged for sentence with the aggravated sexual assaults. Both defendants were separately charged with giving false information and otherwise acting to hinder the apprehension of themselves and the other. Hence, each stood to be sentenced for three counts of aggravated sexual assault and four counts of hindering apprehension.

use of force. (The supervisory relationship of these defendants with the child would have made it a first-degree crime also as to a victim under sixteen. *N.J.S.A.* 2C:14–2a.(2)(b)). As a crime of the first degree, the offense is the most serious, with the exception of murder, in the Code.[2] It warrants the highest range of punishment under the Code—up to twenty years imprisonment with a ten-year parole disqualifer. *N.J.S.A.* 2C:43–6a.(1). The range of sentence for the third-degree offenses of hindering apprehension is between three and five years, with a possible parole disqualifer of one-half the sentence imposed. *N.J.S.A.* 2C:43–6a.(3); *N.J.S.A.* 2C:43–6b.

Following conviction in 1983, defendant Yarbough was sentenced on the three counts of aggravated sexual assault to three consecutive maximum twenty-year terms of imprisonment, with consecutive ten-year terms of parole ineligibility, and on each of the four hindering-apprehension counts, to four-year terms of imprisonment with parole disqualifiers of two years. Two of the hindering-apprehension sentences were made consecutive to each other and to the sentences imposed on the sexual-assault counts. Two were made concurrent to each other and to the sentences imposed previously. Yarbough was also fined $8,300 made payable to the Violent Crimes Compensation Board. His aggregate sentence was sixty-eight years imprisonment with a minimum parole ineligibility of thirty-four years.

Defendant Smith was sentenced on the three aggravated-sexual-assault charges to consecutive fifteen-year terms with consecutive seven-year periods of parole ineligibility, and on the four hindering-apprehension charges, to four four-year terms with parole disqualifiers of two years. These sentences were made concurrent to each other and to the terms imposed on the sexual-assault charges. Smith was also fined $1,500 and penal-

---

[2]There are separate sentencing terms for murder and kidnapping. *N.J.S.A.* 2C:11–3b.; 13–1c.; *see State v. Serrone,* 95 *N.J.* 23 (1983).

ized a total of $1,700, made payable to the Violent Crimes Compensation Board. Smith's aggregate sentence was thus forty-five years imprisonment with a parole-ineligibility period of twenty-one years.

On appeal, the Appellate Division, in an unreported opinion, affirmed their convictions, but remanded the matter to the trial court to consider the sentences imposed in light of our decisions in *State v. Hodge, supra*, 95 *N.J.* 369, and *State v. Roth*, 95 *N.J.* 334 (1984), which were announced on February 7, 1984. Following two sentencing hearings, the trial court modified the sentences for each defendant by reducing the first of the sexual assaults to fifteen years with a five-year parole disqualifer. As modified, Yarbough's aggregate sentence was sixty-three years imprisonment with a parole disqualifer of twenty-nine years, and Smith's aggregate sentence was forty-five years imprisonment with a parole disqualifer of nineteen years.

On defendants' further appeal, the Appellate Division concluded that the trial court had incorrectly addressed the aggravating and mitigating factors specified in *N.J.S.A.* 2C:44–1a. and b. 195 *N.J.Super.* at 142–44. It found that the court had invoked as aggravating factors facts that the Legislature had incorporated into the Code as part of the original grading of the offense, for example, that the crime involved an eleven-year-old child and that the defendants had betrayed their position of responsible trust for the child. Under the Code, the Legislature has already incorporated these factors in rating the crime as one of the first degree. Aggravating and mitigating factors other than the crime itself are to be weighed under *N.J.S.A.* 2C:44–1f.(1) in order to arrive at an appropriate sentence within the maximum/minimum range specified in *N.J. S.A.* 2C:43–6a. for each degree of crime. A list of the applicable aggravating and mitigating factors, other than the crime itself, is contained in *N.J.S.A.* 2C:44–1a. and b. On balance, depending on the preponderance of aggravating or mitigating factors, the court may impose a sentence within the maximum

and minimum range provided for the degree of the offense. If "clearly convinced" that the aggravating factors substantially outweigh the mitigating factors, the court may also impose a period of parole ineligibility pursuant to *N.J.S.A.* 2C:43–6b.

Because appellate review of sentencing requires that the trial court apply correct legal standards in imposing sentence, the Appellate Division concluded that the sentences could not be sustained. Because it had specifically remanded the matter to the sentencing court to exercise its discretion in accordance with the Code's standards, the court declined to remand the matter again and instead exercised original jurisdiction. Although recognizing that sentences in other cases are not a certain guide, the Appellate Division examined recent sentences in comparable cases and, in an effort to assure a predictable degree of uniformity in sentencing, it considered such sentencing patterns to be a confirmation of its view that the aggregate sentences imposed here were excessive.

As to defendant Yarbough, for the aggravated sexual assaults, the court reimposed the twenty-year term with a ten-year parole disqualifer on the first sexual-assault charge. However, the sentences imposed on the two remaining sexual charges were made concurrent to each other and to the sentence imposed on the first assault. On the hindering-apprehension counts, on one count the Appellate Division imposed a four-year term with a parole ineligibility of two years, and the sentence was made consecutive to the sentences imposed for the sexual assaults. On the remaining hindering counts, the Appellate Division imposed concurrent four-year terms with two-year parole disqualifiers concurrent to the terms imposed on the sexual-assault counts. Thus, defendant Yarbough's sentence was an aggregate of twenty-four years with twelve years of parole ineligibility.

With regard to defendant Smith, the Appellate Division reduced the sentence imposed for the aggravated sexual assaults to concurrent fifteen-year terms of imprisonment with concur-

rent five-year parole disqualifiers. On the hindering-apprehension counts, the Appellate Division imposed one four-year term with a two-year parole disqualifer made consecutive to the aggravated-sexual-assault sentences. On the remaining hindering counts, the court imposed concurrent four-year terms with two-year parole disqualifiers concurrent to the terms previously imposed. Smith's sentence was an aggregate of nineteen years with seven years of parole ineligibility.

We granted the State's petition to review the question of consecutive-sentencing standards under the Code of Criminal Justice. 99 *N.J.* 195 (1984).

## II

The paramount goal of sentencing reform was greater uniformity. *State v. Roth, supra,* 95 *N.J.* at 361. As noted, to that end, the Code channels the discretion of sentencing judges in fixing the terms of sentences for offenses under that Code. In *State v. Roth, supra,* 95 *N.J.* at 341–56, we reviewed in detail the development of the sentencing standards under the Code. In its structure, the New Jersey Code establishes a scheme of "presumptive sentencing." Under that scheme, the Legislature has broken crimes down into sub-categories, established degrees of severity, determined how much the presumptive first-offender's sentence would be increased for succeeding convictions, defined specific aggravating or mitigating factors, and provided that " '[o]nly in truly extraordinary and unanticipated circumstances would the judge be permitted to deviate from the presumptive sentence *beyond* the narrow range permitted by an ordinary finding of aggravating or mitigating factors.' " *State v. Roth, supra,* 95 *N.J.* at 355 (quoting the Twentieth Century Fund Task Force on Criminal Sentencing, *Fair and Certain Punishment* 21 (1976) (emphasis in original) [hereinafter cited as *Fair and Certain Punishment*] ).

Our Code resembles a model for sentencing based on notions of proportionality and desert. The model has two main fea-

tures: first, the primary criterion for the severity of punishment is the gravity of the defendant's crime; second, sentencing discretion is regulated through standards that prescribe the quantum of punishment for different species of criminal conduct. For each gradation of seriousness, a normally-recommended sanction is set. Offenders convicted of crimes of that gravity will ordinarily receive that quantum of punishment. The Code requires the sentencing court to look at the individual offender in balancing the defined aggravating and mitigating factors (including the defendant's prior record, cooperation, or the likelihood of further criminal conduct) to determine the range of the sentence, a parole disqualifier, or an extended term. *N.J.S.A.* 2C:43–6a. and b.; 2C:43–7; and 2C:44–1f. (The Graves Act, *N.J.S.A.* 2C:43–6c. and d., prescribes certain mandatory terms for defined weapons offenses.)

The Code does not define with comparable precision the standards that shall guide sentencing courts in imposing sentences of imprisonment for more than one offense. With certain narrow exceptions, *see N.J.S.A.* 2C:44–5b.(3), –5c., and –5h., the Code states only that "multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence". *N.J.S.A.* 2C:44–5a. In general, "discretionary powers conferred by the code shall be exercised in accordance with the criteria stated in the code and, insofar as such criteria are not decisive, to further the general purposes * * * " of the Code. *N.J.S.A.* 2C:1–2c.

There being no specific criteria stated in the Code, we must fashion standards for discretion that will best further the purposes of the Code.[3] Those purposes center upon the concept

---

[3]Our pre-Code decisional law did not set standards for consecutive sentences. *State v. Maxey*, 42 *N.J.* 62, 65 (1964), mainly noted that our courts have the discretion and power to impose consecutive sentences for terms of years, citing *State v. Mahaney,* 73 *N.J.L.* 53 (Sup.Ct.1905), aff'd, 74 *N.J.L.* 849 (E. & A.1907). At common law, since death was the penalty for all felonies, "there was * * * no rational point, once having sentenced a man to death, to direct that he be

that punishment of crime be based primarily on principles of deserved punishment in proportion to the offense and not rehabilitative potential, and that in dispensing that punishment, our judicial system should attain a predictable degree of uniformity. Our standard for imposing consecutive sentences should be consistent with those goals.

## III

To place the problem in perspective, it is necessary to recall briefly the history of sentencing that we reviewed in *State v. Roth, supra,* 95 *N.J.* at 345–56. Under prior law, sentencing theory reflected the viewpoint that reformation and rehabilitation of offenders was a major goal of criminal sentencing. Under that mold, proponents of sentencing based on rehabilitation advocated a presumption in favor of concurrent sentencing to facilitate the reform of the defendant. The Legislature merely set maximum and minimum terms. The court would impose a sentence within the range and the basic decision, as to release of the prisoner, was left to the correctional and parole authorities. Concurrent sentencing increased the flexibility available to prison officials to determine prisoners' release dates based on rehabilitation.

By contrast:

A system of just deserts with an objective of allocational fairness must take the opposite approach. On retributive grounds, two offenses deserve a more severe sanction than one offense. The offender who commits two armed robberies should, all other things being equal, serve more time than the offender who commits one robbery. Concurrent sentences frustrate this objective, and consecutive sentences thus should be the rule in a just deserts model.

---

hanged a second time." *State v. Maxey, supra,* 42 *N.J.* at 65. Other decisions on consecutive sentences, while sustaining the power of imposition, did not discuss the standards. *State v. Roleson,* 14 *N.J.* 403, 409, *cert.* den., 347 *U.S.* 947, 74 *S.Ct.* 647, 98 *L.Ed.* 1095 (1954); *State v. Vance,* 112 *N.J.Super.* 479, 481 (App.Div.1970); *State v. Cox,* 101 *N.J.Super.* 470, 476 (App.Div.1968), certif. den., 53 *N.J.* 510 (1969).

[Perlman and Stebbins, "Implementing an Equitable Sentencing System: The Uniform Law Commissioners' Model Sentencing and Corrections Act," 65 *Va.L.Rev.* 1175, 1220 (1979).]

But the failure to provide guidelines for sentencing judges faced with a choice between consecutive and concurrent sentences "undermines both the objective of fair allocation of punishment and the principle of retribution." *Id.* at 1221. The problem does not admit of an easy solution: "Offenders who are to be sentenced at one time upon multiple convictions present the just deserts sentencing system with thorny issues." Raymar, "Criminal Dispositions for New Jersey: Pretrial Intervention, the Model Penal Code, and Just Deserts," 8 *Seton Hall L.Rev.* 1, 55 (1976). The multiple-offense problem arises in three common situations.

First, multiple charges may stem from one incident, as when one possesses and then sells a narcotic drug. At the other extreme, multiple charges may arise from distinct, dissimilar offenses, such as one indictment charging possession of a switchblade, and another charging extortion (without any weapon involved). Third, a single criminal activity may involve multiple and distinct but similar criminal acts, as when one sells narcotic drugs on a number of occasions, perpetrates a series of fraudulent land sales, or extorts money from a number of victims. [*Id.* at 55.][4]

This case presents problems of the second or third variety. The hindering-apprehension charges were distinct and dissimilar to the sexual offenses. The single criminal activity of sexual abuse upon this victim involved multiple and distinct, but similar, criminal acts. We shall focus our consideration primarily upon the form of single criminal activity involving multiple and distinct, but similar, criminal acts. In this situation, a determination of proportionality and desert is made more complex by the role of prosecuting authorities who have the discretion to choose to prosecute for one or many of such similar offenses. "By accumulating separate counts or offenses a prosecutor can enhance the sentence far beyond what is appropriate or desirable." Model Sentencing and Corrections Act

---

[4]As to the first such issue, the author notes that the merger doctrine may be appropriate for resolution of the problem, citing *State v. Best*, 70 *N.J.* 56 (1976).

§ 3–107 comment (1978), *reprinted in* 10 *U.L.A.* 60 (Supp.1985) (special supplementary pamphlet). For example, in the case of bookmaking or drug sales, the evidence might disclose thirty or forty betting or drug transactions. Query whether such a criminal is deserving of forty times the punishment of one as to whom the evidence disclosed one or two incidents? Almost all agree that the answer should be no. Not all agree on the solution. That source for a model of sentencing upon which our Code was most closely based posits that it would be senseless "to give the criminal 'free' crimes after a certain number," *Fair and Certain Punishment, supra,* at 27, and suggests that the best solution would be "to devise a sophisticated system in which every additional crime in a series carried an increment of punishment but not the full increment of a consecutive sentence." *Id.* at 27–28. That is an ideal that has not been met in our Code but should provide us with the broad outlines of a solution.

## IV

Varied patterns have been developed to channel consecutive-sentencing discretion. The recent "Symposium on Determinate Sentencing," 5 *Hamline L.Rev.* 161 (1982), summarizes the development of such consecutive or concurrent standards.

California and Illinois, for example, have employed statutory methods to channel discretion. California has a complex method of calculating sentence enhancements and the consecutive features of sentences. In broad outline, in the case of violent felonies, California permits the imposition of consecutive sentences upon these requirements: (1) a written record be provided of the reasons for the selection of a particular sentence; (2) the principal term shall consist of the greatest term of imprisonment imposed for any one of the crimes, including any enhancements; and (3) the subordinate term of each consecutive violent felony may include one-third of any enhancements imposed on the first violent crime. *See People v. Price,* 151

*Cal.App.*3d 803, 199 *Cal.Rptr.* 99 (Cal.Ct.App.1984); *People v. Hernandez,* 120 *Cal.App.*3d 500, 175 *Cal.Rptr.* 22 (Cal.Ct. App.), aff'd, 30 *Cal.*3d 462, 179 *Cal.Rptr.* 239, 637 *P.*2d 706 (1981); *People v. Blessing,* 94 *Cal.App.*3d 835, 155 *Cal.Rptr.* 780 (Cal.Ct.App.1979).

Illinois has adopted a somewhat simpler procedure than the California method. The actual aggregation of the consecutive sentences is to be performed by the Department of Corrections and shall consist of (1) an aggregate maximum boundary consisting of a combination of all the maximum terms, and (2) an aggregate minimum boundary consisting of a combination of all the minimum terms. "In essence what the process accomplishes is to determine a single upper and lower boundary similar to those prescribed by statute, but with the qualification that the maximum term 'shall not exceed the sum of the maximum terms authorized * * * for the two most serious felonies involved.'" 5 *Hamline L.Rev., supra,* at 385 (citing *Ill.Ann.Stat.,* ch. 38 §§ 1005–8–4(c) and (e) (Smith-Hurd 1980)). Like California, Illinois requires reasons for the imposition of consecutive sentences.

Other jurisdictions have chosen to use sentencing guidelines. Minnesota allows judges substantial discretion in imposing consecutive sentences. The guidelines limit the use of consecutive sentences to multiple-person offenses against different victims and escape offenses, but within that category, consecutive sentences are permissive and require no justification. *See* Minnesota Sentencing Guidelines Commission, *Guidelines and Commentary* 22–25 (1983).

The State of Washington provides sentencing guidelines that recognize that multiple crimes involving at least one violent crime should be treated more severely than multiple-property crimes, but state that uniform application of policies is necessary to avoid disparity in sentencing. Washington's recommended policy is that when there is at least one violent offense and not all offenses arose out of the same act, the sentences be

consecutive, but the range of sentence should score the most serious offense by using the prior history of the offender and score the other offenses using a "zero offender's score." This scoring for multiple counts is to avoid double counting of factors. *See Wash.Rev.Code Ann.* § 9.94A.400; Sentencing Guidelines Commission (Wash.), *Report to the Legislature* 15–16 (Jan. 10, 1983).

Other jurisdictions without statutory or commission-adopted guidelines have achieved similar results. Colorado has incorporated the 1968 American Bar Association Standards For Criminal Justice Relating to Sentencing Alternatives and Procedures. In particular, it concluded that authority to impose consecutive sentences should be circumscribed by the following limitations:

The aggregate maximum of consecutive terms should not be permitted to exceed the term authorized for an habitual offender * * * for the most serious of the offenses involved. If there is no provision for an habitual offender for the offenses involved, there should be a ceiling on the aggregate of consecutive terms which is related to the severity of the offenses involved * * * * [*DeBose v. People*, 175 *Colo.* 356, 361, 488 *P*.2d 69, 71 (1971) (en banc) (citing § 3.4(b)(i) of the ABA Standards).][5]

In the analogous context of multiple offenses within a single criminal episode, Oregon suggests that consecutive sentences are appropriate only when the defendant poses an unusual risk to the safety of the public, and requires the sentencing court to state affirmatively the reasons for imposing consecutive sentences. *State v. Garcia,* 288 *Or.* 413, 432, 605 *P*.2d 671, 681 (1980) (en banc). The reasons must be consistent with the legislative policies concerning proportional sentencing, rehabili-

---

[5]The 1968 ABA Standards for Criminal Justice were in draft form and have since been approved and incorporated in the second edition ABA Standards for Criminal Justice (1980). Section 3.4 has since been superseded by Standard 18–4.5. (*See* Appendix). The commentary to the Standards states that the revisions are mcdest and are intended only to provide flexibility for the guidelines drafting agency. Subparagraph (b)(i) has been modified to conform with the second edition's withdrawal of support for a separately-authorized extended term for the habitual or dangerous offender, the maximum for which was previously used as the outer limit on the permissible cumulation of sentences.

tation, deterrence, and protection of the public. *Id.* Without specific statutory authority establishing criteria for effective appellate review of sentences, particularly of the choice between concurrent and consecutive sentences, the Oregon Supreme Court has nonetheless concluded that, "[t]aken together, the legislature's recent enactments reflect[ed] a continuing policy to bring rationality and proportionality to the penal dimension of criminal law, a dimension often marked by haphazard statutory penalties, by a deliberate or fortuitous multiplicity of charges, and by the tactical opportunities these factors offer in plea negotiations." *State v. Cloutier,* 286 *Or.* 579, 594, 596· *P.*2d 1278, 1286 (1979). It cited with approval the ABA Standards for Criminal Justice incorporated by the Colorado court. *Id.* at ——, 596 *P.*2d at 1285–86 n. 12.

Tennessee has reached a similar result through the Model Penal Code. It limits consecutive sentencing to:

(1) the persistent offender, defined as one who has previously been convicted of two felonies or of one felony and two misdemeanors committed at different times when he was over eighteen (18) years of age; (2) the professional criminal, one who has knowingly devoted himself to criminal acts as a major source of livelihood or who has substantial income or resources not shown to be derived from a source other than criminal activity; (3) the multiple offender, one whose record of criminal activity is extensive; (4) the dangerous mentally abnormal person, so declared by a competent psychiatrist who concludes as a result of a presentence investigation that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior or by persistent aggressive behavior with heedless indifference to consequences; and (5) the dangerous offender, hereinafter defined. [*Gray v. State,* 538 *S.W.*2d 391, 393 (Tenn.1976) (footnote omitted).]

Tennessee defines a dangerous offender as one who has little or no regard for human life, and no hesitation about committing a crime in which risk to human life is high. *Id.*

The recently-enacted Comprehensive Crime Control Act of 1984, *Pub.L. No.* 98–473, 98 Stat. 2017, created a commission, the United States Sentencing Commission, to adopt guidelines to be used by sentencing courts in determining the sentence to be imposed in a criminal case. *See* 28 *U.S.C.A.* § 991 (West 1985 supp.). The Commission is obligated to insure that these

guidelines reflect the appropriateness of imposing an incremental penalty for each offense in a case in which a defendant is either convicted of multiple offenses committed in the same course of conduct or multiple offenses committed at different times. The guidelines shall also convey the general unsuitability of imposing consecutive sentences for an offense of conspiring to commit a crime or soliciting commission of a crime and for an offense that was the sole object of the conspiracy or solicitation. *See Pub.L. No.* 98–473, § 217(a), 28 *U.S.C.A.* § 994(*l*).[6]

■ These various provisions reflect some of the common concerns expressed in the various models of sentencing reform that have been promulgated over the last two decades. (*See* Appendix). Although varying in content, these disciplines reflect, in whole or in part, the following criteria:

(1) there can be no free crimes in a system for which the punishment shall fit the crime;

(2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;

---

[6]Not-yet-enacted provisions dealing with consecutive sentencing are those recommended by the New York State Committee on Sentencing Guidelines. The committee recommended that

if the aggregate maximum term of consecutive sentences imposed for two or more class B through E felonies exceeds 20 years, the maximum sentence is calculated as 20 years; if one of the sentences imposed is for a class B felony, the maximum term is calculated as no more than 30 years. If the aggregate maximum term of consecutive sentences imposed for two violent felony offenses, one of which was a class B violent felony, exceeds 40 years, it is calculated as 40 years. If the aggregate maximum terms imposed for three or more violent felony offenses, one of which is a class B violent felony offense, exceeds 50 years, it is calculated as 50 years. Class A felonies have a maximum term of life and are therefore excluded from these statutory restrictions. [New York State Committee on Sentencing Guidelines, *Determinate Sentencing Report and Recommendations* 30 (March 29, 1985).]

(3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:

 (a) the crimes and their objectives were predominantly independent of each other;

 (b) the crimes involved separate acts of violence or threats of violence;

 (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

 (d) any of the crimes involved multiple victims;

 (e) the convictions for which the sentences are to be imposed are numerous; [7]

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.[8]

We adopt these criteria as general sentencing guidelines for concurrent or consecutive-sentencing decisions (including any parole ineligibility feature) when sentence is pronounced on one occasion on an offender who has engaged in a pattern of behavior constituting a series of separate offenses or committed multiple offenses in separate, unrelated episodes. In this case both features are present and the composite sentence for

---

[7]These reasons are suggested by *Cal.R.Ct.* 425, *cited in People v. Blessing, supra,* 94 *Cal.App.*3d 835, 155 *Cal.Rptr.* 780.

[8]In New Jersey, had an extended term been available for this sexual offense, it could have been between twenty years and life, with a possible twenty-five-year parole disqualifier. *N.J.S.A.* 2C:43–7. The presumed extended term is 50 years. *N.J.S.A.* 2C:44–1f; *see State v. Guzman,* 199 *N.J.Super.* 346, 350 (Law Div.1985). Only one extended term can be imposed in a multiple-sentencing proceeding. *N.J.S.A.* 2C:44–5a.(2); *State v. Chavies,* 185 *N.J.Super.* 429, 431 (App.Div.1982).

the sexual assaults and hindering counts should be considered within these guidelines. As previously noted, multiple offenses committed in the process of seeking one criminal objective (such as the burglar's guilt of possession of burglary tools, burglary, and possession of stolen property) present additional substantive concerns, *see* Model Sentencing and Corrections Act, *supra,* § 3–107 (Comment), but these principles should aid as well in the fashioning of such sentences.

## V

■ Applying these standards to this case prompts us to remand. Our analysis of the sentencing transcripts leads us to agree with the Appellate Division that certain of the factors that the trial court used in its decision whether to make the sentences consecutive were, in part, the same factors that the Legislature has invoked to establish the very degree of the crime, for example, the nature of the crime and the age of the victim. We are not without understanding that the loathsome nature of these offenses be found reflected in the court's sentence. As the trial court stated on remand:

> The crime to me is the most aggravating of all aggravating factors. Words fail me to express on record the actual chagrin I felt as a human being hearing and witnessing the depiction of rape of a child by a man three times her age, with support of that child's mother.

> \* \* \* \* \* \* \* \*

> To me the enormity of that crime committed by not mentally defective people, but by people as I recall who had the benefit—what most of us hope that we can have—of family upbringing and a decent education. To me, as I said, it was the most aggravating of all aggravating factors.

Indeed, it is that very enormity of moral reproach that makes the crime one of the first degree. *See State v. Link,* 197 *N.J.Super.* 615, 620 (App.Div.1984) (where an essential element of a crime is a specific fact, that element may not be used as an aggravating factor to impose a custodial sentence that is longer than the presumptive term or to impose parole ineligibility); *People v. Price, supra,* 151 *Cal.App.*3d 803, 199 *Cal.Rptr.* 99 (the same fact may not be used to establish both upper terms of

sentence and full-force consecutive sentences). Concededly, since the age of the victim alone makes the crime one of the first degree, it is, however, appropriate to consider the relationship between the parties as an aggravating factor in determining whether to impose a maximum sentence for a first-degree crime. *See N.J.S.A.* 2C:44–1a.

 By the same token, we believe that a sentencing court could, within the guidelines that we have established, conclude that each of the sexual offenses and each of the hindering offenses posed a distinct and different danger to the victim for which separate punishment would be warranted. Those separate, consecutive punishments would ordinarily not be graded at the maximum range; they would typically not exceed in aggregate duration, except for an habitual offender, the longest term for the two most serious offenses. In fashioning such a sentence, the court will be conscious that "though a defendant's conduct may have constituted multiple offenses, the sentencing phase concerns the disposition of a single, not a multiple, human being." *State v. Cloutier,* 286 *Or.* 579, 591, 596 *P.* 2d 1278, 1284 (1979). Thus, in molding that consecutive sentence, the court will normally make an overall evaluation of the punishment for the several offenses involved, *State v. Rodriguez,* 97 *N.J.* 263, 274 (1984), reflecting that its goal is not an exercise "whose object is to find the maximum possible period of incarceration for a convicted defendant." *People v. Price, supra,* 151 *Cal.App.*3d at 822, 199 *Cal.Rptr.* at 109.

██ As noted, our review of the sentencing proceedings below discloses that, because the standards we have defined today were not evident before our decision, they were not followed in this case by the trial court or the Appellate Division. Accordingly, we conclude that the matter should be remanded for resentencing. Because of this case's long history, it is best that this resentencing be done anew by a court not previously committed to a sentence imposed under different standards. Sentencing, although requiring the most sensitive exercise of guided discretion under the Code, does not require the same

in-court experience that weighing credibility or demeanor does. Defendants such as these, although not deserving of society's pity, must be sentenced in accordance with law "after reflection and with a sense of proportionality." *People v. Price, supra,* 151 *Cal.App.*3d at 822, 199 *Cal.Rptr.* at 109 (citing ABA Standards for Criminal Justice, Standard 18–3.2 (1980)). The gravity of these offenses has been established by the jury's verdict. The independent aggravating factors are set forth in the record. The presence or absence of mitigating factors may be derived from the presentence reports. Accordingly, we remand the case to the Superior Court, Law Division, for further proceedings.

We recognize that even within the general parameters that we have announced there are cases so extreme and so extraordinary that deviation from the guidelines may be called for. Still, we believe that we must strive for some degree of proportionality. *Fair and Certain Punishment, supra,* is not just the title of a book. It is a goal that we have pursued continuously for over fifty years in New Jersey. *See State v. Poteet,* 61 *N.J.* 493, 500–01 (1972) (Jacobs, J., concurring); *State v. Johnson,* 67 *N.J.Super.* 414, 429 (App.Div.1961). We repose the paramount responsibility for fair and certain sentencing justice in our trial courts. They share the goal of our appellate courts that there be a predictable degree of uniformity in sentencing. Much remains to be done to attain that goal at all levels of the judiciary. It is a goal that we shall continue to seek. We believe that the standards we outline today will aid in that pursuit.

In this case, for the reasons stated, the case is remanded to the trial court for further proceedings in accordance with this opinion. Jurisdiction is not retained.

*For remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7 join in this opinion.

*Opposed*—None.

## APPENDIX

Model Sentencing and Corrections Act (U.L.A.1978), *reprinted in* Supplementary Pamphlet to 10 U.L.A. (1985)

§ 3–107. [Concurrent and Consecutive Sentences.]

(a) If multiple sentences are imposed on a defendant or if a sentence is imposed on a defendant already subject to an undischarged sentence, the sentences shall run consecutively; but the sentences shall run concurrently if (1) they are imposed for 2 or more offenses committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective; or (2) one of the acts constituting a separate offense is taken into account to enhance a sentence on the other offense.

(b) Notwithstanding subsection (a), a sentence, when combined with all other undischarged sentences and remaining undischarged parts of prior sentences, may not exceed twice the maximum term of the most serious offense involved. The phrase "the maximum term of the most serious offense" as used in this subsection means the statutory maximum term of the offense carrying the longest maximum term, but does not include the additional term that could be imposed on a persistent offender or for an especially aggravated offense.

(c) Notwithstanding subsection (b) a sentence imposed on a defendant for an offense committed while serving a sentence of continous confinement for a prior offense shall run consecutively to the remaining part of the sentence for the prior offense.

(d) In all cases in which consecutive sentences are imposed the sentencing court shall direct that the sentence most restrictive of the person's liberty shall be served first.

## COMMENT

The traditional approach to multiple sentences taken in sentencing systems based in part on rehabilitative purposes has been to establish a presumption in favor of concurrent sentencing. Concurrent sentences greatly facilitate the exercise of parole discretion. In a sentencing system that focuses primarily on the offense, consecutive sentencing for multiple offenses is required. On the

other hand, requirements for consecutive sentences can greatly enhance the impact of the prosecutor's charging discretion on the sentence imposed. By accumulating separate counts or offenses a prosecutor can enhance the sentence far beyond what is appropriate or desirable. This section seeks to reach an accommodation on this difficult question.

\* \* \* \* \* \* \* \*

Model Penal Code (ALI, Proposed Official Draft 1962), *reprinted in* 10 U.L.A. 433–668 (Master edition).

§ 7.06. Multiple Sentences; Concurrent and Consecutive Terms

(1) Sentences of Imprisonment for More Than One Crime. When multiple sentences of imprisonment are imposed on a defendant for more than one crime, including a crime for which a previous suspended sentence or sentence of probation has been revoked, such multiple sentences shall run concurrently or consecutively as the Court determines at the time of sentence, except that:

(a) a definite and an indefinite term shall run concurrently and both sentences shall be satisfied by service of the indefinite term; and

(b) the aggregate of consecutive definite terms shall not exceed one year; and

(c) the aggregate of consecutive indefinite terms shall not exceed in minimum or maximum length the longest extended term authorized for the highest grade and degree of crime for which any of the sentences was imposed; and

(d) not more than one sentence for an extended term shall be imposed.

\* \* \* \* \* \* \* \*

[Under § 7.03, the Court may sentence a person who has been convicted of a felony to an extended term of imprisonment if the Court determines that a defendant is a persistent offender, professional criminal, a dangerous and mentally abnormal person, or a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted. The justification for a defendant to receive an extended term is that it is necessary for protection of the public.]

ABA, *Standards for Criminal Justice: Sentencing Alternatives and Procedures* (1980)

Standard 18–4.5. Multiple offenses: same state; concurrent and consecutive terms

(a) After convictions of multiple offenses which are separately punishable or in cases where the defendant is serving a prison sentence at the time of conviction, the extent, if any, to which sentences are made to run consecutively rather than concurrently should be left to the discretion of sentencing authorities.

(b) Consecutive sentences should not routinely be imposed. Authority to impose a consecutive sentence should be circumscribed by the following limitations:

(i) There should be a ceiling on the aggregate maximum of consecutive terms which is reasonably related to the severity of the offenses involved;

(ii) The aggregate minimum of consecutive terms should be governed by the limitations stated in standard 18–4.3 [provisions for dealing with indeterminate and flat-time sentences];

(iii) The court should not be authorized to impose a sentence which is consecutive in whole or part to any other sentence until a presentence report (standards 18–5.1 to 18–5.5), supplemented by a report of the examination of the defendant's mental, emotional, and physical condition (standard 18–5.6), has been obtained and considered;

(iv) Imposition of a sentence which is consecutive in whole or in part to any other sentence should require the affirmative action of the sentencing court. The court should be authorized to impose such a sentence only after a finding that confinement for such a term is necessary in order to protect the public from further serious criminal conduct by the defendant; and

(v) The guideline drafting agency should be required to address the question of when consecutive sentences should be prohibited because of the relationship between multiple offenses.

These limitations should also apply to any sentence for an offense committed prior to the imposition of sentence for another offense, whether the previous sentence for the other offense has been served or remains to be served.

(c) Corrections and parole authorities should be directed to consider an offender committed under multiple sentences as though the offender had been committed for a single term whose limits were defined by the cumulative effect of the multiple sentences.

§ 3204 Proposed Federal Criminal Code, *reprinted in, Final Report of the National Commission on Reform of Federal Criminal Laws* 291–92 (1971)

\* \* \* \* \* \* \* \*

(3) Maximum Limits Where Felony Involved. The aggregate maximum of consecutive sentences to which a defendant may be subject shall not exceed the maximum term authorized by section 3201(1) for the most serious felony involved, except that a defendant being sentenced for two or more Class C felonies may be subject to an aggregate maximum not exceeding that authorized by section 3201(1) for a Class B felony if each Class C felony was committed as part of a different course of conduct or each involved a substantially different criminal objective [and a defendant being sentenced for two or more Class B felonies may be subject to an aggregate maximum not exceeding that authorized by section 3201(1) for a Class A felony if each Class B felony was committed as part of a different course of conduct or each involved a substantially different criminal objective].