693 A.2d 1222

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JAMES PENNINGTON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 29, 1996—Decided May 22, 1997.

Humphreys, J.A.D., dissented with separate opinion.

Before Judges PRESSLER, HUMPHREYS and WECKER.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Robert L. Sloan*, of counsel and on the brief).

*Robert W. Gluck*, Middlesex County Prosecutor, attorney for respondent (*Nicholas P. Ruggiero*, Assistant Prosecutor, of counsel and on the brief)

The opinion of the court was delivered by

WECKER, J.S.C., temporarily assigned.

After a consolidated jury trial, defendant was convicted of multiple crimes arising out of four separate incidents charged in two indictments.[1] On Indictment 224–01–93, defendant was convicted of two counts of second-degree burglary, *N.J.S.A.* 2C:18–2, for which he was sentenced to two consecutive ten-year prison terms, each with a five-year period of parole ineligibility.[2] On Indictment 432–03–94 defendant was convicted of two counts of first-degree kidnapping, *N.J.S.A.* 2C:13–1(b), and received two extended term life sentences on those convictions, each with a twenty-five year period of parole ineligibility. He was also convicted of two counts of first-degree armed robbery, *N.J.S.A.* 2C:15–1, for which he was sentenced to two twenty-year terms. Defendant was also convicted of second-degree burglary for which he was sentenced to an extended term of 20 years. Sentences on all counts of Indictment 432 were imposed concurrent to each other, but consecutive to the aggregate twenty-year term on

---

[1] Indictment 224–01–93 was returned on January 29, 1993. Indictment 432–03–94 was returned March 23, 1994 and superceded six counts of Indictment 224.

[2] On Indictment 224, weapons offenses were merged for sentencing with the burglary. Defendant was sentenced to time served on the disorderly persons offense.

Indictment 224.[3]  Defendant appeals the convictions and the aggregate sentence, a base term of life plus twenty years with a thirty-five year parole disqualifier.  On appeal, defendant makes the following arguments:

*POINT I*

THE ADMISSION OF TESTIMONY CONCERNING IMPERMISSIBLY SUGGESTIVE IDENTIFICATION PROCEDURES, WHEREBY THE VICTIM REVIEWED PHOTOGRAPHS ONLY OF DEFENDANT, VIOLATED DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. *U.S. CONST.* AMEND. V, VI, XIV; *N.J. CONST.* (1947) ART. I, PARS. 1, 9, 10.

*POINT II*

IN A CASE WHERE CHARGES INVOLVING FOUR SEPARATE INCIDENTS HAD BEEN JOINED FOR TRIAL, THE JUDGE'S FAILURE TO INSTRUCT THE JURORS TO CONSIDER THE EVIDENCE OF EACH CHARGE SEPARATELY DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. *U.S. CONST.* AMENDS. V, VI, XIV; *N.J. CONST.* (1947) ART. 1, PARS. 1, 9, 10.  (NOT RAISED BELOW).

*POINT III*

THE STATE'S PROCUREMENT OF A SUPERSEDING INDICTMENT, WHICH CONTAINED FAR MORE SERIOUS CHARGES AND WAS RETURNED IMMEDIATELY BEFORE THE SCHEDULED COMMENCEMENT OF TRIAL ON THE ORIGINAL CHARGES, REPRESENTED IMPROPER RETALIATION FOR DEFENDANT'S REFUSAL TO PLEAD GUILTY, IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. *U.S. CONST.* AMENDS. V, VI, XIV; *N.J. CONST.* (1947) ART. I, PARS. 1, 9, 10.

*POINT IV*

SINCE THE CONFINEMENT OF THE VICTIMS WAS MERELY INCIDENTAL TO THE UNDERLYING CRIME OF ROBBERY, A NECESSARY ELEMENT OF KIDNAPPING WAS NOT ESTABLISHED AND DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED. *U.S. CONST.* AMENDS. V, VI, XIV; *N.J. CONST.* (1947) ART. I, PARS. 1, 9, 10.

*POINT V*

DEFENDANT'S EXTENDED TERM SENTENCE OF LIFE IMPRISONMENT WITH A 25 YEAR MANDATORY MINIMUM PLUS TWO CONSECUTIVE SENTENCES TOTALLING 20 YEARS WITH A 10-YEAR MANDATORY MINIMUM WAS MANIFESTLY EXCESSIVE.

---

3 On Indictment 432, weapons offenses were also merged for sentencing with the burglary, and third-degree criminal restraint offenses were merged with the kidnappings.

We have reviewed the defendant's contentions in light of the record, the applicable law and the arguments of counsel and conclude that the contentions raised in Points I through IV are without merit and do not warrant extended discussion in a written opinion. *R.* 2:11-3(e)(2). We therefore affirm the convictions.[4] However, we conclude that errors in the sentence, an inadequate statement of reasons, and the excessive aggregate sentence require that we vacate defendant's sentence and remand the entire matter for resentencing.

The convictions arose out of four incidents that occurred on three days at two motels. The evidence permitted the jury to find the following facts. In the early morning hours of November 22, 1992, defendant burglarized the room of an employee at the Residence Inn in South Brunswick, armed with a knife with which he threatened the employee. On the same morning, defendant burglarized the room shared by two businessmen at the Ramada Inn in South Brunswick, robbed each of them at knife-point and tied them up to facilitate his escape. On December 8, defendant was found in possession of property stolen from a guest at the Residence Inn. In the last incident, on December 15, defendant burglarized another guest's room at the Residence Inn.

We are mindful of the applicable standard of review. *See State v. Roth,* 95 *N.J.* 334, 364-65, 471 *A.2d* 370 (1984). The Supreme Court has repeatedly reiterated the *Roth* standard. *See, e.g., State v. Roach,* 146 *N.J.* 208, 680 *A.2d* 634 (1996) (remanding for reconsideration of sentence based on disparity of co-defendant's sentence).

An appellate court should disturb the sentence imposed by the trial court only in situations where the sentencing guidelines were not followed, the aggravating and

---

[4] We note without further comment that the first count of Ind. 224 correctly recited the elements of second degree burglary, whereas the typed heading referred to the charge as a third degree burglary. On the other hand, the third count of that indictment recited the elements of third degree possession of a weapon for an unlawful purpose, whereas the typed heading referred to the charge as a second degree offense. Both counts were corrected by agreement of counsel in conformity with the recitations therein.

mitigating factors applied by the trial court are not supported by the evidence, or applying the guidelines renders a particular sentence clearly unreasonable. Only when the facts and law show "such a clear error of judgment that it shocks the judicial conscience" should a sentence be modified on appeal.

[*Id.* at 230, 680 *A*.2d 634 (citations omitted).]

The Court continues to instruct us to follow the steps set forth in *Roth* for review of a sentence. *See State v. Megargel,* 143 *N.J.* 484, 493–94, 673 *A*.2d 259 (1996) (reversing downgrade to second-degree kidnapping and entering judgment for minimum first-degree sentence):

The role of appellate courts in reviewing sentences is to determine: (1) whether the exercise of discretion by the sentencing court was based upon findings of fact grounded in competent, reasonably credible evidence; (2) whether the sentencing court applied the correct legal principles in exercising its discretion; and (3) whether the application of the facts to the law was such a clear error of judgement that it shocks the judicial conscience. A reviewing court may not substitute its own judgment for that of the sentencing court. Judges who exercise discretion and comply with the principles of sentencing remain free from the fear of "second guessing."

[*Id.* at 493–94, 673 *A*.2d 259 (citations omitted).]

We do not intend to "second-guess" the sentencing judge. Nevertheless, certain errors invite our attention. Moreover, the severity of the sentence is "clearly unreasonable so as to shock the judicial conscience." *State v. Roth, supra,* 95 *N.J.* at 365, 471 *A*.2d 370.

The most serious offenses for which defendant was convicted arose out of the November 22 incident at the Ramada Inn in which two roommates were robbed. Not only was defendant convicted of two counts of first-degree robbery, but also two first-degree kidnappings. These first-degree kidnapping convictions were established by minimal facts necessary to establish the element of restraint: proof that defendant tied up the victims in order to insure his getaway. Although obviously frightened, they were neither transported nor hidden, were quickly able to free themselves, and were certain to be found without undue delay or injury. In *State v. Zadoyan,* 290 *N.J.Super.* 280, 292, 675 *A*.2d 698 (App.Div.1996), we reversed a sentence that approached the maximum for carjacking because

> [D]efendant was being sentenced for a carjacking under the least egregious definition of that offense and ... "the severity of the crime is now the single most important factor in the sentencing process."
>
> [*State v. Hodge*, 95 *N.J.* 369, 379, 471 *A.2d* 389 (1984).]

The same reasoning applies here. As we said in *Zadoyan,*

> We are persuaded that the Legislature intended that the high end of the sentencing range be reserved for the carjackings that involve the most serious accompanying elements. *See State v. Megargel, supra,* 143 *N.J.* at 500, 673 *A.2d* 259 (noting that "[t]he surrounding circumstances of an offense may make it very similar to a lower degree offense, thus suggesting that a downgraded sentence may be appropriate.").

Sentencing defendant to the top of the twenty-years-to-life extended term range is unreasonably harsh. That is particularly so where the extended life term requires the sentence to include twenty-five years without parole. Moreover, the sentence was imposed consecutive to two consecutive ten-year terms, each with a five-year parole bar. This defendant received sentences at the top of the range for virtually every conviction, again at the top of the range of parole ineligibility terms wherever a parole bar was imposed, and finally to three consecutive sentences. To say that the sentencing judge "threw the book" at this defendant would be an understatement. We do not minimize defendant's crimes nor suggest that they do not deserve a lengthy prison term. Nevertheless, reasonableness in sentencing requires a sense of proportion.

That a sentence imposed after a trial is more severe than a previously-rejected plea offer is not alone a basis for finding the actual sentence excessive. However, an extreme disparity between the State's offer and the sentence imposed after trial can be considered by this court when reviewing the reasonableness of the sentence. Just a few days before trial, the State confirmed its offer to recommend a fifteen-year sentence with a seven-and-one-half-year parole bar in exchange for guilty pleas to all of the charges. By contrast, defendant was sentenced to life plus twenty years with a thirty-five-year parole bar.

The record does not support defendant's contention that the superceding indictment reflects retaliation for refusing the plea

bargain, and we have not addressed that contention in this opinion. However, a comparison of the two indictments reveals that for fourteen months the State was satisfied to charge the lesser offenses. The first-degree kidnapping charges under Indictment 432, for which defendant received the most severe sentences, were originally charged as third-degree criminal restraints in Indictment 224. The first-degree robberies were originally charged as second-degree burglaries. The prosecutor assured the court that the State had "already provided all the discovery materials for this new . . . indictment. . . ." With no new evidence, the State upgraded the charges less than two weeks before trial.

Even under the recently-enacted "three strikes" law, *N.J.S.A.* 2C:43–7.1,[5] imposing a mandatory life term without parole in certain cases,[6] the statute requires release at age 70 after thirty-five years in prison so long as the prisoner is determined not to be a danger to others. The sentencing judge recognized that this 36–year–old defendant would be seventy-one before he becomes eligible for parole. In effect, he has been sentenced just as if his offense and record qualified him as the most serious repeat offender.

The State admits that under *N.J.S.A.* 2C:44–5(a)(2), defendant should have been sentenced to only one extended term, not three.[7]

---

[5] *L.* 1995, *c.* 126, § 2 effective June 22, 1995. Defendant was sentenced on August 25, 1994 and is not subject to this statute.

[6] Life without parole is now required when a defendant is convicted for the third separate time for any of the following: murder, aggravated manslaughter, first-degree sexual assault, and first-degree robbery. *N.J.S.A.* 2C:43–7.1 a. This defendant's prior convictions in 1987 on three counts, none within the named categories, and in 1977 on four qualifying offenses, would satisfy *N.J.S.A.* 2C:43–7.1 b, which imposes a mandatory extended term. They do not satisfy the prerequisites for a life term without parole.

[7] The State correctly points out that although the sentence on Counts 2 and 3 of Indictment 432 are described on the judgment of conviction as "an extended term of twenty (20) years . . .," the offenses are first-degree robberies for which the statutory range is ten to twenty years.

We have previously held this statutory limitation applicable irrespective of the concurrency of sentences. *State v. Latimore,* 197 *N.J.Super.* 197, 223, 484 *A.*2d 702 (App.Div.1984), *certif. denied,* 101 *N.J.* 328, 501 *A.*2d 978 (1985). Inadequate explanation of the sentencing judge's reasons for each of the sentences prevents us from exercising meaningful review and generally requires a remand for resentencing. *State v. Miller* 108 *N.J.* 112, 122, 527 *A.*2d 1362 (1987). *Cf. State v. Perry,* 124 *N.J.* 128, 177, 590 *A.*2d 624 (1991) (affirming consecutive sentences not separately explained where they clearly fit guidelines).

We have several additional concerns. In imposing each of three "extended term" sentences, there was a failure to abide by the instructions of *State v. Dunbar,* 108 *N.J.* 80, 527 *A.*2d 1346 (1987). In *Dunbar* the Supreme Court discussed the combination of extended term sentencing and imposition of a parole disqualifier. *Id.* at 92–95, 527 *A.*2d 1346:

> The reasoning that harmonizes the imposition of parole ineligibility on a presumptive term for an extended sentence is the same reasoning that leads to the conclusion that the prior offenses should not be considered (or at least not as much) in deciding whether the sentence should be increased above or decreased below the presumptive term but should be used in deciding on parole ineligibility. A court that has decided to impose an extended term in the interest of public protection on the basis of defendant's prior offenses may conclude quite correctly that a presumptive extended term reflects the appropriate balance of other aggravating factors against mitigating, but that the totality of aggravating factors, including the prior record, clearly and substantially outweighs the mitigating factors and calls for a period of parole ineligibility.
>
> [*Id.* at 94, 527 *A.*2d 1346 (citation omitted).]

We cannot presume to conclude, as the State suggests, that "either first-degree kidnapping sentence must be upheld with the proper modifications made to the other two sentences." [Sb at 34] *See also State v. Ghertler,* 114 *N.J.* 383, 555 *A.*2d 553 (1989).

> Significantly, the trial court, perhaps anticipating the warning in *State v. Miller, supra,* 108 *N.J.* at 122, 527 *A.*2d 1362, avoided "double counting" of the factors relied on in imposing the maximum sentence for each offense, with a parole disqualifier, and in making the sentences consecutive.
>
> [*Id.* at 391, 555 *A.*2d 553.]

We recognize the Legislature's overruling of *State v. Yarbough,* 100 *N.J.* 627, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106

*S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986) in its subsequent amendment of *N.J.S.A.* 2C:44–5(a)(2). Nevertheless, the trial judge stated his intention to follow *Yarbough,* presumably because the offenses preceded the amendment,[8] but in fact did not do so. The facts simply do not support his conclusion that this was a case that would be exceptional under *Yarbough,* justifying three consecutive sentences, each to the longest available term. Despite defendant's extensive record, which includes threats with a knife but no physical harm to any of the victims, we cannot in good conscience affirm the sentence of life plus twenty years, the first thirty-five years to be served without parole.

We affirm the convictions, but reverse the sentences and remand for reconsideration.

HUMPHREYS, J.A.D., dissenting.

The defendant was convicted by a jury of numerous crimes arising out of four separate criminal episodes. The crimes included two kidnappings, two armed robberies and four burglaries. These crimes and the defendant's horrific criminal record mark him as a violent and dangerous career criminal. His incorrigibility is demonstrated by his statement to the sentencing judge that "[r]ight now, I couldn't say that I could walk out of these doors and not commit another crime." His incorrigibility is also shown by his arrest on two occasions while on bail waiting trial for the crimes in this case. One of these arrests was for aggravated assault and armed robbery. The probation department recommended maximum incarceration for the protection of society.

The judge imposed an aggregate sentence of life imprisonment plus twenty years with a thirty-five year period of parole ineligibility. My colleagues conclude that the sentence shocks the judicial

---

[8] The Supreme Court has continued to cite *Yarbough* for the proposition that "a shorter second term should generally be imposed 'where consecutive terms are imposed for the same offense'...." *State v. Roach, supra,* 146 *N.J.* at 231, 680 *A.*2d 634.

conscience and is manifestly excessive. I disagree. The sentence is within the limits established by law and is necessary in order to protect the public. What is shocking is that the criminal justice system had not put an end to this desperado's criminal career long before now.

Historically, the severity of criminal sentences could not be reviewed on appeal. *See State v. Roth*, 95 *N.J.* 334, 341, 471 *A.*2d 370 (1984). In 1961, we concluded that sentences which were manifestly excessive could be revised on appeal even if within authorized statutory limits. *See State v. Johnson*, 67 *N.J.Super.* 414, 432, 170 *A.*2d 830 (App.Div.1961); *see also State v. Kunz*, 55 *N.J.* 128, 141, 259 *A.*2d 895 (1969).

However, this appellate review is quite limited. The "reserve" of judicial power to modify sentences will be exercised infrequently and only when the sentencing judge's "application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience." *State v. Roth, supra*, 95 *N.J.* at 364, 471 *A.*2d 370.

Further, an appellate court must "avoid the substitution of appellate judgment for trial court judgment. What we seek by our review is not a difference in judgment, but only a judgment that reasonable people may not reasonably make on the basis of the evidence presented...." *Id.* at 365, 471 *A.*2d 370.

Thus, "[t]he test ... is not whether a reviewing court would have reached a different conclusion on what an appropriate sentence should be; it is rather whether, on the basis of the evidence, no reasonable sentencing court could have imposed the sentence under review." *State v. Ghertler*, 114 *N.J.* 383, 388, 555 *A.*2d 553 (1989). Consequently, "[w]hen conscientious trial judges exercise discretion in accordance with the principles set forth in the Code and defined by us today, they need fear no second-guessing." *State v. Roth, supra*, 95 *N.J.* at 365, 471 *A.*2d 370.

Furthermore, in formulating a sentence, the New Jersey Code of Criminal Justice "requires an inexorable focus upon the offense" and not the offender. *Id.* at 367, 471 *A.*2d 370; *accord*

*State v. Jabbour,* 118 *N.J.* 1, 9, 570 *A.*2d 391 (1990). The sentence "must reflect primarily the severity of [the] crime." *State v. Hodge,* 95 *N.J.* 369, 377, 471 *A.*2d 389 (1984). "The severity of the crime is now the single most important factor in the sentencing process." *Id.* at 378–79, 471 *A.*2d 389.

The severity of the crime here is apparent. The defendant's crimes were breaking into hotel rooms and robbing the occupants. In one foray, he subdued two hotel guests at the point of a knife. He demanded their money and valuables. He forced his victims to lie on the floor and tied their hands behind their heads. He put packaging tape over their bound hands and taped their feet. He then prowled the room looking in the drawers, closets and suitcases. The victims were terrified. At one point, the defendant said that the victims were making him "very, very nervous" because he was having difficulty finding their money. After that statement, the victims, tied and helpless, became even more terrified.

The defendant finally found the money. He told the victims that if they did not want to be hurt, they should not make any sudden moves or telephone calls. He then tore the telephone from the wall and left. The victims were unable to free themselves until some twenty minutes had passed.

The jury convicted the defendant of first degree kidnapping of these two hotel guests as well as other crimes. The Legislature has determined that first-degree kidnapping is a "particularly serious crime." *State v. Megargel,* 143 *N.J.* 484, 503, 673 *A.*2d 259 (1996). "It is evident that the Legislature intended harsh treatment for kidnappers." *State. v. Brent,* 137 *N.J.* 107, 120, 644 *A.*2d 583 (1994). The sentence imposed here is consistent with that legislative intention.

Moreover, the defendant's criminal history warrants a most severe sentence. His record is one of constant crime. When released from prison, he almost immediately commits more crimes. He was arrested in October 1976 and indicted for (1) abduction while armed; (2) rape while armed; (3) assault with intent to rape; and (4) threatening to take a life. He was

sentenced on the rape charge to New Jersey State prison for no less than ten years concurrent to sentences from another county, and on the armed portion to New Jersey State prison for two to five years. The other three charges were dismissed.

He was arrested in October 1977 and indicted for robbery. He was sentenced to New Jersey State prison for a concurrent term of five to seven years.

He was arrested in November 1977 and indicted for robbery and robbery while armed. He was sentenced on the armed robbery to a concurrent term of two to five years. Later in that same month, he was arrested and indicted for robbery and robbery while armed. He was sentenced on both charges to concurrent State prison terms.

Upon being paroled and discharged, he was arrested in September 1984 and charged with kidnapping and attempted sexual assault. He was sentenced to six months in the county jail.

In 1986, he was indicted for burglary, aggravated assault, possession of a weapon for an unlawful purpose and armed robbery. He was sentenced to an aggregate of ten years with five years parole ineligibility concurrent to a violation of parole.

He was paroled again and promptly arrested in December 1992 for the present crimes. Upon making bail for these crimes, he was arrested for two more crimes committed while on bail.

This defendant is the classic incorrigible criminal whose first act upon being released from prison is to commit more crimes. Our criminal laws are designed to protect society from such chronic criminals through the imposition of lengthy prison terms. Our courts have consistently complied with that legislative mandate. In *State v. Ghertler, supra*, 114 *N.J.* at 393, 555 *A.*2d 553, the defendant had a lengthy criminal history. In upholding a maximum sentence imposed by the trial judge, the Supreme Court stated that although the aggregate sentence might be "seen as severe, it is hardly so harsh, so wide of the mark, as to shock the conscience".

A major purpose of the Code of Criminal Justice is "[t]o insure the public safety by preventing the commission of offenses through the deterrent influence of sentences imposed and the confinement of offenders when required in the interest of public protection." *See N.J.S.A.* 2C:1–2(b)(3) (emphasis added). The imperative of public safety was eloquently described in a series of decisions by former Chief Justice Weintraub. *See State v. Davis,* 50 *N.J.* 16, 22, 231 *A.*2d 793 (1967) ("Pre-imminent in the galaxy of values is the right of the individual to live free from criminal attack in his home, in his work, and the streets. The Government is established to that end, as the preamble of the Constitution of the United States reveals and our State Constitution, Art. I, Par. 2, expressly says...."). *State v. McKnight,* 52 *N.J.* 35, 52–53, 243 *A.*2d 240 (1968) ("[T]he first right of the individual [is] the right to be protected from criminal attack in his home, in his work, and in the streets. Government is constituted to provide law and order;" the government's "primary mission [is] to protect the first right of the individual to live free from criminal attack."); *State v. Bisaccia,* 58 *N.J.* 586, 590, 279 *A.*2d 675 (1971) ("The first right of the individual is to be protected from attack. That is why we have government, as the preamble to the Federal Constitution plainly says.").

In sentencing criminals, our Supreme Court has faithfully followed Chief Justice Weintraub's teaching. In *State v. Whitaker,* 79 *N.J.* 503, 401 *A.*2d 509 (1979), the defendant and his accomplices entered the victims' homes, assaulted and robbed them. At least one of the accomplices was no more than nineteen years old. The judge imposed an aggregate sentence of between forty-three and fifty years. The Appellate Division concluded that the aggregate sentence was "unduly harsh and punitive and [that] justice will best be accomplished by some modification." *Id.* at 504, 401 *A.*2d 509.

The Supreme Court in restoring the trial court's sentence found that the Appellate Division had fallen into "grave error." *Ibid.* The Court said that defendant's crimes were not "steeped in

emotional pressures" nor did they comprise "in an otherwise blameless life, an 'isolated excursion beyond the pale of the law induced by engulfing circumstances,' but on the contrary [were] a 'cold-blooded' criminal venture...." *Id.* at 516–17, 401 *A.*2d 509. As a result, the defendant was not " 'an unlikely recidivist ... already ... punished by his continuing deep remorse' or one whose acknowledgment of wrongdoing would seem contrary to rehabilitation.' " *Id.* at 517, 401 *A.*2d 509 (citation omitted). The Supreme Court concluded that the sentencing judge had " 'properly [given] paramount concern to the magnitude of the crime and the deterrence of others rather than to the attributes of the offender.' " *Ibid.* (quoting *State v. Leggeadrini,* 75 *N.J.* 150, 158, 380 *A.*2d 1112 (1977)).

Here, too, the sentencing judge gave paramount consideration to the magnitude of the defendant's crimes, to the deterrence of the defendant and other criminals and to the protection of society. *See State v. Dunbar,* 108 *N.J.* 80, 97, 527 *A.*2d 1346 (1987) (the decision to impose an extended term "requires consideration of the need for public protection"). The judge found no mitigating factors. His reasons were "terse" but sufficient. *See State v. Ghertler, supra,* 114 *N.J.* at 392, 555 *A.*2d 553; *see also State v. Dunbar, supra,* 108 *N.J.* at 97, 527 *A.*2d 1346 ("It is not necessary that every sentence be a discourse.").[1]

This defendant is indisputably a dangerous criminal who is unremittingly dedicated to a life of violent crime. Judge Kuhlthau imposed a lawful sentence which will protect the public from this predator. In so doing, Judge Kuhlthau complied with Chief Justice Weintraub's belief that all judges hold office for the protection of a criminal's next victim. *See State v. Bisaccia, supra,* 58 *N.J.* at 590, 279 *A.*2d 675. I would affirm the defendant's conviction and sentence.

---

[1] The existence of sentencing errors here does not require a modification of the aggregate sentence. Hence, a remand is not necessary. We should exercise our original jurisdiction to correct the errors conceded by the State. *See R.* 2:10–5; *see also State v. Megargel, supra,* 143 *N.J.* at 506, 673 *A.*2d 259.