**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2961-18
    A-5023-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JASON BAKER,

     Defendant-Appellant.

_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

LUIS BELTRAN,

     Defendant-Appellant.

_____

        Argued (A-2961-18) and Submitted (A-5023-18)
        December 2, 2021 – Decided February 4, 2022

        Before Judges Alvarez, Mawla, and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 94-06-0667.

James K. Smith, Jr., Assistant Deputy Public Defender, argued the cause for appellant Jason Baker (Joseph E. Krakora, Public Defender, attorney; James K. Smith, Jr., of counsel and on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant Luis Beltran (Andrew R. Burroughs, Designated Counsel, on the briefs).

Kaila L. Diodati, Assistant Prosecutor, argued the cause for respondent in A-2961-18 (Jennifer Webb-McRae, Cumberland County Prosecutor, attorney; Danielle R. Pennino, Assistant Prosecutor, of counsel and on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent in A-5023-18 (Lauren Bonfiglio, Deputy Attorney General, of counsel and on the brief).

Appellant Luis Beltran filed a pro se supplemental brief.

PER CURIAM

Co-defendants Jason Baker and Luis Beltran appeal from the January 29, 2019 imposition of concurrent life terms entered after a resentence hearing. We affirm, but remand for a third hearing in light of the Supreme Court's decision in State v. Comer.[1]

---

[1] State v. Comer, ___ N.J. ___ (2022).

Defendants[2] murdered an elderly couple during a home invasion burglary on March 2, 1994.  Before breaking into the isolated home through a basement window, then sixteen-year-old Beltran cut wires he believed activated a burglar alarm system, and almost immediately shot the wife four times, execution-style. The group dragged the victim's body down the stairs and left her in a corner of the basement.

The victim's husband returned home some forty-five minutes later.  Baker shot twice, striking the husband's cheek with the second bullet.  The husband fled the house and ran down the driveway, attempting to escape.  The burglars gave chase.  When they caught him, one of them smashed the husband's head with the butt of the gun, knocking him down to the ground, before the group kicked and beat him.  The trio dragged the husband back into the house where they stabbed and pummeled him to death.  The medical examiner found the husband suffered twenty-seven separate injuries, including thirteen cut wounds, four tear wounds, four fractured ribs, a bullet wound, and numerous defensive wounds.

Beltran and Baker were prosecuted as adults.  A jury convicted Beltran of the following charges:  (1) burglary, N.J.S.A. 2C:18-2 (count one); (2) murder

---

[2]  A third participant is not involved in this appeal.

 A-2961-18

of Margaret McLoughlin (Margaret), N.J.S.A. 2C:11-3(a)(1) and (2) (count two); (3) felony murder of Margaret, N.J.S.A. 2C:11-3(a)(3) (count three); (4) murder of George McLoughlin (George), N.J.S.A. 2C:11-3(a)(1) and (2) (count four); (5) felony murder of George, N.J.S.A. 2C:11-3(a)(3) (count five); (6) robbery of Margaret, N.J.S.A. 2C:15-1 (count six); (7) robbery of George, N.J.S.A. 2C:15-1 (count seven); (8) possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count eight); (9) possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count nine); (10) unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count ten); (11) unlawful possession of a knife, N.J.S.A. 2C:39-5(d) (count eleven); (12) criminal mischief, N.J.S.A. 2C:17-3(a)(1) (count twelve); and (13) false incrimination, N.J.S.A. 2C:28-4(a) (count thirteen).

On January 13, 1995,[3] the trial judge sentenced Beltran to two consecutive life terms for the two murder convictions, each carrying the minimum mandatory thirty-year parole ineligibility period. The judge merged the felony murders and possession of a weapon for unlawful purposes, imposing concurrent terms for the remaining offenses. We affirmed the convictions and sentences. State v. Beltran, No. A-4362-94 (App. Div. May 23, 1997). Beltran appealed no further.

---

[3] The judgment of conviction (JOC) was dated January 27, 1995.

 A-2961-18

Beltran's third post-conviction relief petition (PCR) asserted his sentence violated Miller v. Alabama, 567 U.S. 460 (2012), which declared mandatory life terms imposed for juveniles convicted of homicide unconstitutional under the Eighth Amendment. In light of State v. Zuber, 227 N.J. 422, cert. denied, ___ U.S. ___, 138 S. Ct. 152 (2017), the Court summarily remanded for resentence. Zuber extended the Miller doctrine to apply to aggregate sentences functionally equivalent to life sentences. See State v. Beltran, 229 N.J. 151 (2017).

After Beltran's trial and sentence in 1995, Baker pled guilty to felony murder as to one victim and murder as to the other. He negotiated for two life terms, each subject to a thirty-year parole bar, with the understanding that the State would argue for consecutive sentences. The trial court conducted the sentencing hearing on May 18, 1995, and entered the JOC on May 23, 1995. The trial judge granted the State's application and imposed consecutive terms. Baker appealed, we affirmed, and the Supreme Court denied certification. State v. Baker, 153 N.J. 48 (1998); State v. Baker, No. A-6326-94 (App. Div. Oct. 27, 1997). On April 10, 2017, on reconsideration of his third appeal of unsuccessful PCR petitions, we remanded for resentencing in light of Zuber.

On September 4, 2018, a different judge[4] conducted an extensive sentence hearing. Defendants submitted their psychological evaluations, testimony from Baker's psychologist, statements from the victims' family, and statements from defendants' families. Defendants demonstrated that they had not committed infractions in prison for many years, obtained several certifications and diplomas, and enjoyed their respective families' support. The victims' grandson, among the victims' family members who made statements, lamented that, due to constant updates about defendants' various legal proceedings, "for almost two-thirds of my life, I have not been able to go more than a month or two without direct interaction with this crime."

Beltran's lengthy statement included a discussion of caselaw he considered relevant, and a complaint that he only received the sentencing memoranda from his lawyer and the State a few days prior. Before the judge formally imposed the new sentence on January 29, 2019, the court heard Beltran's supplemental written statement, which he had prepared the prior weekend. During this additional statement, Beltran disagreed with his lawyer's presentation regarding Zuber:

> My confession does contain some facts about this case
> but in the . . . sense, that we went there for guns and

---

[4] The trial judge had since retired.

A-2961-18

> [the victims] were lamentively [sic] killed are horrible facts.
>
> What happened and who did [what] isn't as clear. For example, I have no idea why I confessed to kicking [the husband]. Yeah, I don't remember doing so nor confessing to it but I've seen that it's down in my confession. I don't know why I said that.

Beginning with the submissions regarding Beltran, the judge thoughtfully reviewed the information presented at the hearing, the trial, and the first sentencing. He found aggravating factor one because of the horrific nature of the crimes. N.J.S.A. 2C:44-1(a)(1). He also found aggravating factor three, based not only on the more than forty total juvenile complaints pending or adjudicated against Beltran at the time of the murders, but also because he continued to pose "a substantial risk of [committing] new offenses if released." N.J.S.A. 2C:44-1(a)(3). The judge gave substantial weight to aggravating factor nine. N.J.S.A. 2C:44-1(a)(9). He also afforded great weight to aggravating factor twelve, citing the ages and vulnerability of the victims. N.J.S.A. 2C:44-1(a)(12).

In discussing <u>Miller</u> and <u>Zuber</u>, the judge noted that this crime did not result from impulse, or the casual possession of a gun. Defendants concocted a plan, selected targets, and schemed ahead of time to shoot any occupants in the home. The judge described this home invasion burglary as atypical because of

A-2961-18

the purposeful nature of the homicides, including the multiple assaults upon the husband.

The judge found that despite the passage of time and Beltran's positive growth, he still lacked appropriate maturity, still thought "in concrete ways," and failed to grasp the broader impact of his crimes. Beltran's limited insights and remorse caused the judge to opine he had not been rehabilitated. The judge therefore sentenced Beltran to the original life term subject to thirty years of parole ineligibility, with the major change that Zuber "demand[ed]" the terms be concurrent.

The judge added that, considering the weight of the aggravating factors and total lack of any mitigating factors, the Yarbough[5] factors would ordinarily require a consecutive sentence but for Miller and Zuber. But Miller and Zuber, in his opinion, mandated concurrent sentences. Yarbough would have ordinarily resulted in consecutive sentences for two pre-planned murders committed forty-five minutes apart during a home invasion.

The judge applied the same legal analysis to Baker. He noted Baker had only three juvenile adjudications when originally sentenced. As with Beltran, and for the same reasons, he found aggravating factor one. He also found

---

[5] State v. Yarbough, 100 N.J. 627 (1985).

aggravating factors three and nine. The judge did not believe Beltran had been the "ringleader," but characterized the crime as a "collaborative effort." He even called Baker the "precipitator of the action against [the husband]." Baker shot the newly widowed husband in the face, in his own home, from two feet away. Baker then chased the husband down the driveway, beat him with the gun, knocked him to the ground, "and . . . kicked him in the head and stomped on him . . . ." Baker and his cohorts carried the husband back inside his home, stomped him some more, then ended his life by stabbing him multiple times with his own kitchen knives.

The judge reiterated that this was not the typical situation where, for instance, a convenience store clerk is shot incidental to juveniles committing a theft. Under Yarbough, consecutive sentences would have been warranted had Baker been an adult when he committed murders. While Baker appeared more mature than Beltran, approaching rehabilitation, the judge had concern about his psychological profile, including his history of animal abuse. Unlike Beltran, who grew up in an unfavorable environment, the judge expressed fears that "there's something else going on with . . . Baker."

9

In sum, the judge concluded, after thoughtful consideration of the evidence, that the only thing that had meaningfully changed since the original sentencing was the law—not the fundamental character of defendants.

On appeal, Baker raises the following points:

POINT I

IN RESENTENCING THIS DEFENDANT PURSUANT TO THE DECISION IN STATE v. ZUBER, THE JUDGE FAILED TO ADDRESS THE BOTTOM-LINE ISSUE OF WHETHER DEFENDANT HAD BEEN REHABILITATED DURING HIS MANY YEARS IN PRISON AND WAS "FIT TO REJOIN SOCIETY." ACCORDINGLY, THE MATTER SHOULD BE REMANDED ONCE AGAIN FOR A PROPER RESENTENCING.

A. Zuber Requires That At A Resentencing The Judge Must Determine Whether, In Fact, A Juvenile Offender Has Been Rehabilitated, And If So, That Offender Must Be Resentenced To A Term That Will Allow For His Or Her "Release" From Prison.

B. The Judge Below Failed [To] Conduct A Full Resentencing In Compliance With Zuber.

1. Zuber's Directives For Resentencing

2. Jason Baker's Resentencing.

C. In New Jersey, Consideration For Release On Parole Does Not Constitute A "Meaningful Opportunity For Release Based Upon Demonstrated Maturity And Rehabilitation."

10 A-2961-18

On appeal, Beltran raises the following points:

POINT I

THE SENTENCE IMPOSED IS EXCESSIVE AND MANIFESTLY UNFAIR AS THE SENTENCING COURT FAILED TO PROPERLY CONSIDER AND WEIGH CERTAIN MITIGATING FACTORS.

POINT II

THE SENTENCE IMPOSED IS EXCESSIVE AND UNFAIR AS THE SENTENCING COURT FAILED TO PROPERLY ANALYZE AND APPLY THE RELEVANT MILLER/ZUBER FACTORS.

POINT III

APPLICATION OF THE MANDATORY MINIMUM IN THIS CASE WAS UNCONSTITUTIONAL AS THE MINIMUM REQUIREMENT PRECLUDED THE SENTENCING COURT FROM CONSIDERING AND IMPOSING A SENTENCE CONSISTENT WITH MILLER/ZUBER.

POINT IV

A LIFE SENTENCE WITH A THIRTY-YEAR PERIOD OF PAROLE INELIGIBLITY IS ILLUSORY AS PAROLE BOARD STATISTICS SHOW THAT DEFENDANT IS HIGHLY UNLIKELY TO HAVE A REALISTIC OPPORTUNITY FOR PAROLE REGARDLESS WHETHER [OR NOT] HE PRESENTS EVIDENCE OF HIS REHABILITATION.

11

I.

Except for defendants' contentions that the murder statute's parole ineligibility term is unconstitutional and that parole review does not provide a meaningful opportunity for release, this would have been excessive sentence appeals, albeit through the avenue of post-conviction relief because of Miller and Zuber. However, the Court's recent decision in State v. Comer renders them moot. See State v. Comer, ___ N.J. ___ (slip op. at 6-7).

The judge addressed defendants' sentences understanding that the minimum sentence alternative for murder was thirty years of parole ineligibility. That is no longer the case.

As in Comer, defendants were juveniles at the time of the offense, although the double-murder home-invasion burglary does not appear to be an example of children "lack[ing] maturity and responsibility . . . ." Id. (slip op. at 45). Defendants intended to commit murder. The victims were not slain incidental to the burglary.

Be that as it may, a new sentencing alternative is now available—namely, parole ineligibility of less than thirty years. See id. (slip op. at 58). At the resentence hearing, the judge must again consider the Miller factors to determine

A-2961-18

whether defendants have been rehabilitated and are more cognizant of the risks and consequences of their actions.  See ibid.

Although the judge found neither defendant rehabilitated, he found neither to be incorrigibly corrupt.  For that reason, we remand the matter again for fresh consideration of the sentence in light of Comer.  Given the lapse in time since the last resentencing hearing, defendants are of course entitled to present up-to-date proofs regarding their conduct in the state prison system, or any other information they consider pertinent to their personal development or to prove rehabilitation.

Vacated and remanded for a sentencing rehearing to be conducted in light of State v. Comer.  We do not reach defendants' additional issues as they are either made moot or irrelevant by this remand.

We express no opinion regarding the outcome of a Comer review of defendants' sentences.  As the Court said, such review allows "minors a later opportunity to show they have matured, to present evidence of their rehabilitation, and to try to prove they are fit to reenter society . . . ."  Id. (slip op. at 51).  The Court also noted that "'[a]n unacceptable likelihood exists that the' brutal nature of an offense can 'overpower mitigating arguments based on youth.'"  Id. (slip op. at 54) (quoting Roper v. Simmons, 543 U.S. 551, 573

(2005)).  Thus, the court must "consider the totality of the evidence[,]" and "explain and make a thorough record of their findings to ensure fairness and facilitate review."  Ibid.

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2961-18