**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3354-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

IBN ALI ADAMS,

    Defendant-Appellant.

_____

Submitted February 24, 2025 – Decided March 7, 2025

Before Judges Sabatino and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 03-01-0231.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Ruth E. Hunter, Designated Counsel, on the brief).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Frank J. Ducoat, Deputy Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This appeal stems from the outcome of a so-called "look-back" sentencing hearing conducted by the trial court pursuant to State v. Comer, 249 N.J. 359 (2022). Although the "look-back" court substantially reduced defendant's aggregate sixty-seven-year sentence to a thirty-year term, he argues the court should have reduced his sentence even further.

For the reasons that follow, we conclude the trial court's determination at the look-back hearing was fair and supported by the record, and therefore reject defendant's claim that he deserved a greater reduction. However, with the State's consent, we remand the matter to the trial court for the limited purpose of correcting apparent clerical errors in the judgment of conviction that do not affect the validity or reasonableness of the revised thirty-year sentence.

I.

We summarize the pertinent facts and procedural history. In 2003 a jury found defendant Ibn Adams guilty of felony murder, multiple robberies, and other related offenses. He committed these offenses at the age of seventeen along with codefendants who included James Comer. Defendant, a juvenile offender, had been waived to be tried as an adult.

2

Following the jury verdict, in March 2004 the trial court imposed on defendant an aggregate sentence of 67 years, with a 60.5-year parole disqualifier under the No Early Release Act ("NERA"), N.J.S.A. 2C:43-7.2.

The conviction and sentence were affirmed on direct appeal by this court and, thereafter, in an opinion by the Supreme Court. State v. Adams, A-4915-03 (App. Div. Dec. 28, 2006), aff'd, 194 N.J. 186 (2008). Defendant unsuccessfully pursued a petition for postconviction relief ("PCR"), the denial of which we affirmed in 2011. State v. Adams, A-0459-10 (App. Div. June 20, 2011).

In its 2022 opinion in State v. Comer, our Supreme Court fashioned a "look-back" remedy to comport with Eighth Amendment principles that recognize the general immaturity of youthful offenders and the difficulty of sentencing courts in predicting their capacity for rehabilitation decades later. 249 N.J. at 394-95. The remedy provides certain juvenile offenders who had been tried as adults and who received long sentences an opportunity, after serving twenty years, to apply to the trial court to demonstrate they have been sufficiently rehabilitated to have their sentences constitutionally shortened. Id. at 403. The Court specified that the most a thirty-year mandatory minimum sentence for murder may be shortened is to twenty years. Ibid.

3

Taking advantage of the Comer look-back process, defendant requested and was provided with a resentencing hearing in April 2022. The hearing was presided over by the same judge who had sentenced him originally.

Defendant presented testimony from two witnesses at the hearing addressing his progress towards rehabilitation. He presented expert testimony from Dr. Roger Harris, M.D., who is board certified in adult psychiatry and forensic psychiatry. Among other things, Dr. Harris opined that defendant's "maturation was [] profoundly hindered" by his upbringing. Defendant also presented lay testimony from one of his aunts, Wajihah Al-Khudair, who recounted defendant's difficult upbringing, which included his state removal from his mother, the loss of his father, and a chaotic home environment with his caregiver aunt. The State did not call any witnesses, but instead relied on defendant's documented criminal history and institutional history in prison.

On June 7, 2022, the trial court issued its resentencing decision, greatly shortening defendant's original sentence. The court imposed the same mandatory minimum sentence of thirty years for the felony murder, but this time ordered all other sentences to run concurrently. This modification produced an aggregate sentence of thirty years, with thirty years parole ineligibility, reducing defendant's sentence by thirty-seven years.

4

As part of its resentencing analysis, the trial court again merged counts one, four, six, nine, and twelve of the indictment. With respect to the non-merged counts, the court again found that aggravating sentencing factors three (risk of reoffense), N.J.S.A. 2C:44-1(a)(3), and nine (the need for deterrence), N.J.S.A. 2C:44-1(a)(9), pertained. However, this time the court applied the recently-enacted mitigating sentencing factor fourteen (being under twenty-six years of age at the time of the offense), N.J.S.A. 2C:44-1(b)(14), as a justification for the lowered aggregate sentence. The court also reexamined the consecutive aspects of the original sentence and concluded that under the principles of State v. Yarbough, 100 N.J. 627, 643 (1985) and its progeny that concurrent sentences were now appropriate.

Defendant now appeals his revised sentences, principally arguing that it inadequately considers the so-called "Miller factors" of mitigation for juvenile offenders set forth by the United States Supreme Court in Miller v. Alabama, 567 U.S. 460, 477-78 (2012). He advocates for an additional ten-year reduction of his felony murder sentence down to twenty years. The State has not cross-appealed the revised sentence, asserting it is a fair and generous modification of the original sentence.

In his brief on appeal, defendant presents the following points:

POINT I

THE RESENTENCING COURT FAILED TO CONSIDER AND APPLY THE TOTALITY OF THE <u>MILLER</u> EVIDENCE PRESENTED, WHICH DEMONSTRATED THAT ADAMS IS NO LONGER AN OFFENDER WHO FAILS TO APPRECIATE RISKS AND CONSEQUENCES BUT RATHER HAS MATURED AND BEEN REHABILITATED. THE FINDINGS OF AGGRAVATING AND MITIGATING FACTORS WERE ALSO NOT BASED ON COMPETENT, CREDIBLE EVIDENCE IN THE RECORD. FOR THESE REASONS, THIS COURT MUST REMAND FOR RESENTENCING.

POINT II

THE TRIAL COURT FAILED TO APPRECIATE THAT DEFENDANT HAD A "TWICE DIMINISHED CAPACITY" BECAUSE HIS ONLY HOMICIDE CONVICTION WAS FOR FELONY MURDER.

POINT III

THE MATTER MUST BE REMANDED FOR RESENTENCING FOR THE FURTHER REASON THAT DEFENDANT RECEIVED AN EXCESSIVELY DISPARATE SENTENCE AS COMPARED TO HIS "SIMILARLY SUFFICIENT" CODEFENDANTS, RENDERING THE SENTENCE UNLAWFUL.

Having considered these points in light of the record and the applicable law, we conclude that no further reduction of defendant's sentence is warranted.

6                                                          A-3354-21

II.

We consider defendant's arguments guided by familiar principles of appellate review of sentencing decisions. In determining the appropriate sentence to be imposed on a defendant, the sentencing court is to consider the codified aggravating and mitigating factors identified at N.J.S.A. 2C:44-1(a) and (b), balance them, and explain how the sentence was determined so that the reviewing court will have an adequate record to review on appeal. State v. Case, 220 N.J. 49, 65 (2014); State v. Fuentes, 217 N.J. 57, 73 (2014).

If the trial court adheres to these sentencing guidelines, the sentence it imposes should be modified only if it "shock[s] the judicial conscience." State v. Roth, 95 N.J. 334, 364 (1984). As the Court instructed in State v. Bieniek, 200 N.J. 601, 612 (2010), when the trial court follows "the sentencing principles set forth in the Code and defined in our case law, its discretion should be immune from second-guessing. We grant to it the deference to which it is entitled under our traditional principles of appellate review of a criminal sentence."

In the present context of resentencing, we are further guided by the constitutional principles set forth in Miller, 567 U.S. at 477-78 (2012) and our Supreme Court's application of the Miller factors in Comer, 249 N.J. at 387, and State v. Zuber, 227 N.J. 422, 453 (2017), to juvenile offenders who receive long

7

adult sentences. Our Supreme Court has distilled the "Miller factors" as follows: "[(1)] [the] defendant's 'immaturity, impetuosity, and failure to appreciate risks and consequences'; [(2)] 'family and home environment'; [(3)] family and peer pressures; [(4)] 'inability to deal with police officers or prosecutors' or his own attorney; and [(5)] 'the possibility of rehabilitation.'" Zuber, 227 N.J. at 453 (quoting Miller, 567 U.S. at 477-78).

The Court held in Zuber that a sentencing judge must consider the Miller factors when sentencing a juvenile to a lengthy period of parole ineligibility. Id. at 447. It also held that a judge must consider the Miller factors in tandem with the state-law sentencing principles set forth in Yarbough, 100 N.J. at 643-44, when imposing consecutive sentences upon juvenile offenders. Zuber, 227 N.J. at 449-50. The Court also recognized that the aggregate impact of consecutively imposed sentences must be considered when applying the Miller factors, bearing in mind the real-world practical expectation of when such an offender with consecutive aggregate sentences might be eligible for parole. Id. at 450.

Our Supreme Court has recognized that "even when judges begin to use the Miller factors at sentencing," some juveniles may appropriately receive long sentences with substantial periods of parole ineligibility, "particularly in cases

8

that involve multiple offenses on different occasions or multiple victims." Id. at 451.

In fashioning the look-back process in Comer to advance these constitutional principles, our Supreme Court directed that resentencing—one that considers all the Miller factors and the "totality of the evidence"—is necessary where a juvenile has served more than twenty years and was sentenced pursuant to the mandatory sentencing provision for murder. 249 N.J. at 403. When assessing an appropriate sentence for juveniles who commit serious offenses, the pivotal consideration is "whether the juvenile offender still fails to appreciate risks and consequences, and whether he has matured or been rehabilitated." Id. at 370. "After assessing the relevant evidence, the trial court . . . has the authority to impose a period of parole ineligibility of less than 30 years, but not less than 20 years." Id. at 406 (emphasis added).

The Court made clear in Comer that the decision to impose a lesser sentence is one of discretion:

> After evaluating all the evidence, the trial court would have discretion to affirm or reduce the original base sentence within the statutory range, and to reduce the parole bar to no less than 20 years. A juvenile who played a central role in a heinous homicide and then had a history of problematic behavior in prison, and was found to be incorrigible at the time of the later hearing, would be an unlikely candidate for relief. On the other

A-3354-21

hand, a juvenile who originally acted in response to peer pressure and did not carry out a significant role in the homicide, and who presented proof at the hearing about how he had been rehabilitated and was now fit to reenter society after two decades, could be an appropriate candidate for a lesser sentence and a reduced parole bar.

[Id. at 370-71.]

We are unpersuaded that the trial court misapplied its discretion in resentencing defendant and in greatly reducing his original sixty-seven-year aggregate term. It is readily apparent that the trial court's application of the Miller factors and other sentencing considerations was fair and sound.

A.

We first examine, ad seriatim, defendant's arguments concerning the court's application of the Miller factors.

Miller Factor One: Defendant's Immaturity, Impetuosity, and Failure to Appreciate Risks and Consequences

Miller recognized that deterrence does not work where a defendant's "immaturity, recklessness, and impetuosity . . . make them less likely to consider potential punishment," invalidating deterrence as a justification for lengthy sentences when applied to youth who acted with these qualities. 567 U.S. at 472.

Defendant asserts this factor was conclusively evidenced. Dr. Harris

10

testified that "the maturation of the prefrontal cortex at age 16, 17 is immature and you are not able to weigh the risks, you are not able to tamp down on your impulsivity, that you're not able to look at the future . . . [nor] weigh all the consequences." He testified additionally that "[defendant's] maturation was . . . profoundly hindered" by his upbringing.

The resentencing court duly recognized that the "hallmarks of youth manifested themselves in defendant's conduct in this case." The court appropriately applied mitigating factor fourteen, further reflecting its fair consideration of youth as a factor in calculating defendant's updated sentence. N.J.S.A. 2C:44-1(b)(14).

Miller Factor Two: Defendant's Family and Home Environment

Miller recognized that there is diminished culpability where a defendant "lack[ed] the ability to extricate [himself] from horrific, crime-producing settings." 567 U.S. at 471.

The defense elicited proof at the hearing that defendant's biological mother used crack and heroin and "resorted to prostitution to support her addictions." When defendant was the age of two, youth services removed him from his mother's care and placed him with an aunt. His home environment with that aunt was allegedly "chaotic." The record suggests that the aunt drank

heavily and had many intermittent house guests, one of whom allegedly attempted to molest defendant. Additionally, when defendant was around eight years old his father was killed in a bar shooting.

While throughout his childhood he received food, clothes, shelter, and was able to attend school and participate in extra-curricular activities, the defense argued, through Dr. Harris's testimony, that defendant received little emotional support at home. However, Al-Khudair testified that she and one of her other sisters who lived with the defendant loved and nurtured him and made sure he was provided for.

In resentencing defendant, the court found this factor to be applicable:

> Defendant describes his childhood as marred by separation, abuse, neglect, rejection and criminal modeling. His mother was an addict and unable to care for him, resulting in him being removed from the home. His father was murdered and he was raised by his paternal aunt. Defendant was raised by his aunt throughout his childhood. Defendant's family was involved in drug using and drug dealing. His brother had a criminal history as well as a history of using drugs. While defendant initially claimed to be—to being raised in a good neighborhood, he was exposed to criminal life from an early age.
>
> . . . .
>
> This Court finds that the defendant grew up in an environment that fostered criminal behavior. The

12

reality of criminal behavior as a way of life was inescapable for the defendant.

Because competent, credible evidence in the record adequately supports that defendant's home environment made his actions less deserving of punishment, the court's application of <u>Miller</u> factor two was not an abuse of discretion.

<u>Miller Factor Three: Defendant's Family and Peer Pressures</u>

<u>Miller</u> recognized that children "'are more vulnerable . . . to negative influences and outside pressures,' including from their family and peers" and that "a child's character is not as 'well formed' as an adult's" and so that "his actions are less likely to be 'evidence of irretrievabl[e] deprav[ity]'" that justify longer sentences. 567 U.S. at 460 (alterations in original).

Dr. Harris testified that at the time of the events "[defendant] [was] on a quest to be seen and be affirmed" and that "it would [have been] very difficult for him to say no when those around him [were] recruiting him."

In resentencing defendant, the court considered this factor and found that "[d]efendant states and the [c]ourt accepts that he was at an impressionable age and may have acted under some influence or pressure from [his codefendants]."

Because the record adequately supports the application of <u>Miller</u> factor three, its application presents no abuse of discretion.

13

<u>Miller Factor Four: Defendant's Inability to Deal with Police Officers or Prosecutors or His Own Attorney</u>

<u>Miller</u> instructed sentencing courts to consider whether a defendant "might have been charged and convicted of a lesser offense if not for incompetencies associated with youth" such as "his ability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys." <u>Id.</u> at 477-78. It further held that where a defendant struggled due to such difficulties, the judge may consider reducing his sentence. <u>Id.</u> at 478-80.

Here, Dr. Harris opined that when offered a plea agreement before trial defendant did not have the capacity to "weigh whether [taking the deal] was a good decision or not" because it was for twenty to twenty-five years, an "amount of years [that was] longer than he [had been] alive at that moment." Defendant did not offer any other evidence supporting this factor.

The resentencing court did not find this <u>Miller</u> factor was demonstrated. The court specifically determined "[t]here's no evidence in the record, except for defendant's current submissions, that indicate he did not work with his prior counsel or had an inability to assist counsel." The court's finding in this regard is adequately supported by the record.

14

<u>A-3354-21</u>

Miller Factor Five:  The Possibility of Rehabilitation

Miller recognized that "incorrigibility is inconsistent with youth" and that rehabilitation removes the justification for lengthy sentences as applied to youthful, changeable, offenders.  Id. at 473.  In this regard, Dr. Harris testified that defendant "falls within that group of individuals that [certain research] has shown to be desistors of criminal activity," meaning an adolescence-limited offender.  To support this, defendant highlighted defendant's completion of various programs while in prison such as "anger management," "cognitive behavioral change," and "twelve steps."  Defendant also highlighted that in 2006 he renounced his gang membership and became a Muslim.

Defendant further argued through Dr. Harris's testimony that he experienced personal growth as the result of suffering a serious injury while playing basketball in 2017.

In response, the State highlighted that defendant received six sanctions while in prison:  (1) in 2011, defendant was sanctioned for possessing a weapon, a shank; (2) in 2012, he was sanctioned for refusing to submit to a jail search; in 2020 he was given three sanctions, (3) for testing positive for a banned substance, (4) for possessing alcohol, and (5) for possessing tobacco; and (6) in 2021, he was sanctioned for the use of narcotic paraphernalia and drugs.  The

State submitted that these multiple disciplinary infractions reflect that defendant had not matured and remained unable to follow societal rules.

In resentencing defendant, the court considered this factor, and gave it limited weight:

> The Court finds that the defendant has been involved in several disciplinary proceedings over the years of incarceration. They were not denied by the defendant. Defendant states he's no longer affiliated with any gangs and has gotten involved in programs at the prison. The most recent incidences occurring within the last two to three years appear to relate to drugs.
>
> . . . .
>
> The defendant has shown some ability to be rehabilitated, but has not been even recently free from incident. His involvement earning certificates at the prison indicates an understanding of the consequences of his previous actions.

The record adequately supports the court's decision to give only some weight to the defendant's rehabilitation; it presents no abuse of discretion.

Summary Concerning the Miller Factors

The record clearly demonstrates the resentencing qualitatively considered each Miller factor and applied those factors that were fairly supported by the evidence: factors one, two, three, and (to a limited extent) five. There was no abuse of discretion in the court's application of the Miller factors.

16

B.

We likewise reject defendant's argument that the resentencing court abused its discretion in considering the pertinent factors for consecutive sentences under Yarbough and related case law. In fact, the court greatly reduced defendant's aggregate sentence by having his sentences all run concurrently.

The court considered "the findings under Yarbough in light of the Miller factors" and decided not to impose consecutive sentences when resentencing: "This [c]ourt finds that while there were four separate robberies and a separate homicide, all the crimes occurred in one spree throughout a single evening on April 17th, 2000." "The crimes and their objects were not predominantly independent of each other, and the crimes were committed so closely in time and place as to indicate a single period of aberrant behavior." However, the court noted that "[a]lthough the crimes indicate a single period of aberrant behavior, the convictions are numerous."

The court decided to impose concurrent sentences after viewing the crimes in light of Miller: "[D]efendant was a juvenile at the time. He grew up in an environment where criminal behavior was acceptable and could not extricate himself from his environment. Over his years of incarceration, defendant has

shown some ability to be rehabilitated."

The court therefore adhered to the Supreme Court's guidance in Comer in converting defendant's consecutive sentences to concurrent ones, based on the distinctive record presented here.

## C.

Defendant claims the resentencing court ignored evidence of other statutory mitigating factors when it found that "no mitigating factors other than the Miller factors and factor fourteen apply to defendant's re-sentencing." We disagree. There was no abuse of discretion in the court's decision to apply only mitigating factor fourteen and aggravating factors three and nine. N.J.S.A. 2C:44-1.

Defendant specifically argues that he "did not contemplate serious harm" and that the resentencing court erred in not applying mitigating factor two, N.J.S.A. 2C:44-1(b)(2). The proofs at the resentencing hearing do not support this contention. Dr. Harris did not testify that defendant did not intend to cause serious harm through his multiple offenses. His testimony did assert that defendant was young and generally not aware consequences that would flow from his actions, but the court adequately took that into account in applying the mitigating factor for youthful offenders under the age of twenty-six. N.J.S.A.

18

2C:44-1(b)(14).

Invoking mitigating factor eight, defendant argues that his conduct was "the result of circumstances unlikely to recur" and that the resentencing court erred in not applying this factor. N.J.S.A. 2C:44-1(b)(8). The record strongly points in the other direction. The resentencing court rightly noted that defendant had been adjudicated as a juvenile ten times before the offenses for which he was convicted. No other evidence was provided to show that defendant would not reoffend. The court did not abuse its discretion in finding mitigating factor eight inapplicable.

Turning to mitigating factor nine, defendant argues that his "character and attitude . . . indicate that he is unlikely to commit another offense" and that the resentencing court erred in not applying this factor. N.J.S.A. 2C:44-1(b)(9). This argument is likewise unavailing. Although the court found that defendant was partially rehabilitated, it recognized that he "has not been even recently free from incident." As already noted, defendant had been sanctioned six times while in prison, with the most recent disciplinary offenses occurring within a year of the resentencing. There were ample grounds for the court to reject mitigating factor nine.

Finally, involving mitigating factor thirteen, defendant argues his conduct

"was _substantially_ influenced by another person more mature than the defendant" and that the resentencing court erred in not applying this factor. N.J.S.A. 2C:44-1(b)(13) (emphasis added). The resentencing court accepted that defendant was subject to some pressure from his co-defendants in weighing Miller factor three, but did not find the evidence supported finding that the influence was substantial enough to give weight to statutory mitigating factor thirteen. It reasonably decided not to apply factor thirteen because "there's no evidence in the record that the defendant was not a willing participant in the crimes."

This decision is adequately supported by the record. Dexter Harrison testified that defendant wanted to continue robbing after the death of George Paul and that defendant was the one who selected at least one of the victims. Nothing in the record shows that defendant was substantially pressured to take part in the robberies; instead, there is ample evidence that defendant was a willing participant. The court did not abuse its discretion in choosing not to apply mitigating factor thirteen.

As for the aggravating factors, defendant argues the resentencing court erred in applying aggravating factor three because Dr. Harris testified that defendant was not likely to reoffend. He also argues that the court erred in not

20

elaborating its reasons sufficiently for applying factor three.

We reject these contentions of error. The resentencing court did refer to and rely upon aggravating factor three, the risk of committing another offense, in tandem with aggravating factor nine, the need for deterring the defendant and others from violating the law. The court stated those aggravating factors "continue to apply and they are applied to the defendant's re-sentencing." That conclusion is adequately supported by the record and is buttressed by the court's rejection of mitigating factors eight and nine.

The trial court noted that defendant was adjudicated as a juvenile ten separate times prior to the present matter and that no evidence was provided to show that defendant would not reoffend other than the expert's assertion. It also recognized that defendant had been sanctioned six times while in prison, with the most recent offenses occurring shortly before the hearing. The record thus provides sufficient competent, credible evidence that defendant posed a risk of reoffending and required deterrence, and that aggravating factor three was applicable.

D.

Defendant's final two points argue that his revised sentence should be further reduced because (1) his sole homicide conviction for felony murder

reflects a "twice diminished moral capacity" and (2) his thirty-year term is disproportionate to the sentences imposed on Comer and Harrison. Those arguments are readily dispelled.

The "twice diminished moral culpability" characterization is based on a premise that defendant had less culpability for the victim Paul's death because he was a juvenile at the time of the offenses and the jury did not find that he shot Paul during the fatal armed robbery and convicted him of only a second-degree, not a first-degree, robbery. The resentencing court was clearly mindful of both of these facets of the case and nevertheless concluded the thirty-year murder sentence was justified.

The court noted that the evidence is unclear whether defendant shot Paul but found that he "knowingly participated in the armed robbery spree." The jury's gradation of the robbery count as a second-degree crime did not preclude the allowable possibility of an arguably inconsistent verdict on the felony murder count. State v Banko, 182 N.J. 44, 53 (2004). The court had ample reason to be skeptical of Harrison's post-verdict affidavit claiming that he, Comer, and defendant had no involvement in Paul's death. And, as we have already discussed, the resentencing judge gave abundant consideration to defendant's impressionability and youthfulness. The revised sentence was not

"morally" unjustified and was well within the court's legal discretion to calibrate.

As for defendant's claim of disparate sentences, that likewise is unavailing. We recognize that Harrison received a comparably lesser sentence of eighteen years with a NERA parole disqualifier, but he pled guilty to manslaughter, not a murder offense, and cooperated with the State pursuant to his agreement. Comer, meanwhile, received upon resentencing a 30-year murder sentence with a parole disqualification period of 25.5 years, 4.5 years less than defendant. Although we were not supplied with Comer's resentencing transcript, there are indicia that he and defendant had different backgrounds, and the same sentencing judge found mitigating facets applicable to Comer that he reasonably did not fond applicable to defendant. Given these differences, there is insufficient proof of disparity to set aside defendant's revised sentence. See State v. Roach, 146 N.J. 208, 232-33 (1996). Defendant manifestly received an "individualized assessment" as prescribed by the law. Zuber, 227 N.J. at 450.

E.

In sum, in assessing the totality of the updated evidence, the resentencing court reasonably exercised its discretion to reduce defendant's sentence by thirty-seven years by having the sentences run concurrently instead of

23

consecutively.  However, it also reasonably chose not to reduce the lengthiest sentence, for felony murder, below the statutory minimum despite having the authority to do so.  See Comer, 249 N.J. at 403.  The record reflects the court qualitatively considered all the requisite factors and did not find defendant fully rehabilitated, the key question under Comer.  Ibid.  That conclusion is supported by substantial and credible evidence in the record and by the court's thoughtful application of legal principles.

The revised sentence was manifestly within the court's discretion, compliant with statutory and constitutional guidelines, and does not shock the judicial conscience.  We accordingly affirm it, substantially for the cogent reasons set forth by the resentencing judge.

That said, we remand the matter to correct, with the State's consent, the apparent clerical errors in judgment of conviction, specifically to correct the judgment of conviction to reflect the correct seven-year NERA sentence on count thirteen and to reflect the mitigating factors that were applied.

We conclude with a parting observation.  A general theme of defendant's brief is that the State and the resentencing court exaggerated the significance of the thirty-seven-year reduction in the aggregate sentence because the original sentence allegedly was manifestly excessive.  We do not adopt that contention.

The original sentence was affirmed on direct appeal and not altered by the ensuing PCR proceedings. Until the Supreme Court issued <u>Comer</u>, there was no authority for the look-back hearing that defendant received. It was not inappropriate for the resentencing court to take into account defendant's original sentence and consider how much, if at all, it needed to be adjusted to comport with constitutional and legal principles. The comparison was logical and not based on any exaggerated or flawed reasoning. And, as we have delineated, the resentencing court gave detailed consideration to the numerous factors that supported the remedy it adopted. We do not second-guess the court's application of its discretion to achieve a fair and justifiable outcome, particularly given its long-standing familiarity with this case.

All other points raised on the appeal lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

25